Robert WHITEHOUSE, et al., Plaintiffs,

v.

H. Rollin IVES, in his capacity as Commissioner of the Maine Department of Human Services, Defendant and Third–Party Plaintiff,

v.

Louis W. SULLIVAN, M.D., in his capacity as Secretary of the United States Department of Health and Human Services, Defendant and Third–Party Defendant.

Civ. No. 87–0332–B.

United States District Court,
D. Maine.

April 17, 1990.

Martha A. Grant, Legal Services for the Elderly, Presque Isle, Me., for plaintiffs.

Richard G. Bergeron and Marina E. Thibeau, Asst. Attys. Gen., Dept. of Human Services, Augusta, Me., for defendant and third-party plaintiff.

Michael M. DuBose, Asst. U.S. Atty., Bangor, Me., and George Eng, Asst. Regional Counsel, Dept. of Health and Human Services, Boston, Mass., for defendant and third-party defendant.

## MEMORANDUM OF DECISION AND ORDER GRANTING IN PART DEFENDANT IVES' MOTION TO DISMISS

GENE CARTER, Chief Judge.

Plaintiff Robert Whitehouse was admitted to a nursing home in Maine and applied for assistance under the cooperative federal-state Medicaid program. The state found him eligible for Medicaid benefits, but under the program's rules determined that he was required to contribute almost all of his monthly income from his civil service pension to help pay for the costs of his care. That determination worked a particular hardship on his wife, Plaintiff Dorothy Whitehouse, who had been primarily a homemaker during the couple's long marriage and who had, therefore, much smaller retirement earnings than her husband.

Plaintiffs brought suit challenging the rules that precipitated the state's determination of Mr. Whitehouse's assessment for cost of care.[1] Specifically, Plaintiffs claimed that a portion of Mr. Whitehouse's civil service pension should be considered income to his wife, rather than entirely his own income, and that mandatory tax withholdings should not have been considered income available to him at all. Plaintiffs contended that the rules employed by Defendants: (1) were not a reasonable determination of Mr. Whitehouse's income and thus violated the federal Medicaid statute (42 U.S.C. § 1396a(a)(17)); (2) violated Plaintiffs' fundamental rights (including but not limited to privacy, marriage, and spousal support) guaranteed by Article I of the Maine Constitution and Amendments I through X of the United States Constitution; (3) violated the equal protection and due process clauses of the 14th amendment and the Maine Constitution; (4) illegally treated withheld income tax as available income; and (5) violated Maine law by failing to implement an applicable state statute, 22 M.R.S.A. § 3174.

After this action commenced, Congress amended, through enactment of the Medicare Catastrophic Coverage Act of 1988, P.L. 100–360, § 303, the provisions of the Medicaid statute at issue here. The amendments took effect on October 1, 1989. The Commissioner of the Maine Department of Human Services (the Commissioner) moves to dismiss Plaintiffs' claims on the grounds that the 1988 amendments favorably address and moot Plaintiffs'

---

1. Plaintiffs originally filed this action in Maine Superior Court. Plaintiffs appealed the Commissioner's adverse ruling, issued after an administrative hearing, which upheld the Commissioner's determination of Mr. Whitehouse's assessment for cost of care. The Commissioner removed the action to this Court and filed a third-party complaint against the federal Defendant. Plaintiffs amended their complaint to add claims against the federal Defendant. The federal Defendant has not moved to dismiss the claims against it; the Court, therefore, addresses only the claims against the Commissioner.

Plaintiffs' original action made class action allegations, but as Plaintiffs have not moved for class certification, the Court treats the action as brought by Plaintiffs individually.

claims. The Commissioner also claims that the prior regulations were valid and did not violate state or federal law. Plaintiffs do not challenge the Act as amended, but seek relief for the period up to the effective date of the amendments.

The Court holds that Plaintiffs' claims for prospective relief are rendered moot by the Medicare Catastrophic Coverage Act of 1988, and thus the Court will dismiss Plaintiffs' claims for injunctive relief. The Court also holds that the income rules employed by Defendants, in the period prior to the effective date of the 1988 amendments, were consistent with the statutory scheme and were reasonable exercises of an explicit, delegated power to define requirements for Medicaid eligibility and the extent of Medicaid benefits. Further, the Court holds that the rules did not violate the federal Constitution. The Court thus will dismiss Plaintiffs' federal constitutional and federal law challenges to the State Defendant's rules. The Court, however, will deny the State Defendant's Motion to Dismiss with respect to Plaintiffs' state law claims.

## I. *Discussion*

To resolve a motion to dismiss, the Court must construe all factual allegations in the complaint in favor of Plaintiffs and decide whether, as a matter of law, Plaintiffs could prove any set of facts which would entitle them to relief. Fed.R.Civ.P. 12(b)(6); *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 25 (1st Cir.1987); 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1357 (1969).[2]

The Medicaid program is a cooperative state-federal program, established by Title XIX of the Social Security Act (42 U.S.C. §§ 1396 *et seq.*), which is intended to provide medical assistance to the indigent and medically needy population. The federal government shares the cost of the program with states that elect to participate, and in return, participating states must comply with requirements imposed by the Medicaid statute and regulations promulgated by the Secretary of the United States Department of Health and Human Services (the Secretary). *Atkins v. Rivera*, 477 U.S. 154, 156–57, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131 (1986); 42 U.S.C. § 1396c.

An applicant who is found eligible for Medicaid may be required to contribute a portion of his income to defray the expense of care. Plaintiffs' claims for relief focus on the method used by the state Defendant, in the period prior to the effective date of the Medicare Catastrophic Coverage Act of 1988, to assess the applicant's portion of financial responsibility for care.

Prior to the 1988 amendments, the federal Medicaid statute imposed guidelines on states that chose to participate in the Medicaid program. 42 U.S.C. § 1396a. The state plan had to include reasonable standards for determining eligibility and the extent of medical assistance under the program. 42 U.S.C. § 1396a(a)(17).[3] In determining the extent of medical assistance, the state could consider only income and resources that were "available" to a Medicaid applicant. *Id.* Congress explicitly delegated to the Secretary legislative authority to prescribe standards to determine what income and resources were available to an applicant, and those standards are entitled to substantial deference. *Id.; Schweiker v. Gray Panthers*, 453 U.S.

---

**2.** In deciding this motion, the Court looks only to the sufficiency of the allegations in the complaint and does not refer to any extraneous matter. Thus, the Court need not treat the motion as one for summary judgment. Fed.R. Civ.P. 12(b); *cf. Medina v. Rudman,* 545 F.2d 244, 247 (1st Cir.1976).

**3.** The federal Medicaid statute required that the state plan for medical assistance

include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this title ...

(B) provide for taking into account only such income and resources as are, in accordance with standards prescribed by the Secretary, available to the applicant or recipient ... (C) provide for reasonable evaluation of any such income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under 21 ...

42 U.S.C. § 1396a(a)(17).

34, 43–44, 101 S.Ct. 2633, 2639–40, 69 L.Ed.2d 460 (1981).[4]

Regulations promulgated by the Secretary, in place prior to 1988, furnished financial eligibility guidelines and delineated what income and resources were available to an applicant for the purposes of determining eligibility and the extent of medical assistance. 42 C.F.R. §§ 435.600, *et seq.*[5] As a condition of eligibility, applicants were required to take all reasonable steps to obtain any pension, retirement or disability benefits to which they were entitled. 42 C.F.R. § 435.603. The state could "deem" a portion of a non-institutionalized spouse's income to be available to an institutionalized spouse in determining his eligibility for Medicaid. 42 C.F.R. § 435.821. The Supreme Court upheld the deeming regulations as within the Secretary's statutory authority and not arbitrary, capricious or irrational. *Schweiker,* 453 U.S. at 44, 101 S.Ct. at 2640. The regulations also required a participating state to reduce its payment for the eligible individual's care by an amount equal to the patient's "income," less certain deductions. 42 C.F.R. § 435.832. The amount of the reduction in the state's payment was determined by taking the patient's *total income* and applying certain deductions, including a potential spousal allowance. *Id.*[6] The Maine state plan mirrored these requirements. *See* Maine Public Assistance Payments Manual, Ch. IV at 6 (Rev. 10/87). The Secretary, as well as the state Defendant, construed the term "total income" to include retirement benefit payments received in the name of the Medicaid applicant/recipient.

### a. Effect of the 1988 Medicare Catastrophic Coverage Act of 1988

■ The Medicare Catastrophic Coverage Act of 1988 clearly was designed to remedy the problems faced by persons in Plaintiffs' situation. The Act clarifies the Medicaid income eligibility guidelines and provides a greater spousal allowance to persons who stay at home when their spouses are institutionalized and receive Medicaid.[7] Plaintiffs have not amended their complaint to challenge the 1988 amendments; in fact, Plaintiffs concede that the "relief which they have sought through this action has been afforded them by the Medicare Catastrophic Act, effective October 1, 1989." Plaintiffs' Memorandum Objecting to Defendant Ives' Motion to Dismiss at 14. The Court holds that the 1988 amendments render moot Plaintiffs' claims for prospective relief, and thus will dismiss Plaintiffs' claims for injunctive relief.

### b. Pension Payments as "Income" to the Pensioner

■ Plaintiffs contend, however, that the prior income rules were invalid. Plaintiffs thus argue that they are entitled to relief for the period between the determination of Mr. Whitehouse's eligibility for Medicaid and the effective date of the 1988 amendments. Citing the Medicaid statute's requirements that the evaluation of an ap-

---

4. The Supreme Court, discussing the Secretary's regulations under this grant of authority, stated:

> In view of this explicit delegation of substantive authority, the Secretary's definition of the term "available" is "entitled to more than mere deference or weight." Rather, the Secretary's definition is entitled to "legislative effect" because, "[i]n a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term."

*Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640 (citations omitted).

5. The federal Medicaid statute establishes several classes of potential Medicaid recipients. The state of Maine has chosen to provide coverage to the "medically needy." *See* 22 M.R.S.A. § 3174; *Hale v. State,* 433 A.2d 374 (Me.1981).

6. The spousal allowance was limited to the highest of three amounts:

> (i) The amount of the income standard used to determine eligibility for SSI for an individual living in his own home;
> (ii) The amount of the highest income standard, in the appropriate category of age, blindness, or disability, used to determine eligibility for an optional State supplement for an individual in his own home, if the agency provides Medicaid to optional State supplemental State supplemental recipients under § 435.230; or
> (iii) The amount of the highest medically needy income standards for one person established under § 435.814.

42 C.F.R. § 435.832(c)(2) (1987).

7. See 42 U.S.C. § 1396r–5(d), "Protecting Income for Community Spouse."

plicant's income be reasonable and include only income that is "available" to an applicant, Plaintiffs assert that the practice of considering retirement benefit payments as owned by the applicant was arbitrary, capricious, and contrary to the Medicaid statute. Plaintiffs claim that some portion of those retirement benefits should be considered income owned by the recipient's spouse.

The Secretary's determination of what income is available to a Medicaid applicant for purposes of eligibility and assessment for costs of care is "entitled to more than mere deference or weight.... [T]he Secretary's definition is entitled to 'legislative effect.'"[8] *Schweiker*, 453 U.S. at 44, 101 S.Ct. at 2640; *see infra* n. 4. In passing on regulations passed under this explicit grant of authority, the Court's inquiry is limited to "determining whether the Secretary has exceeded his statutory authority and whether the regulation is arbitrary and capricious." *Herweg v. Ray*, 455 U.S. 265, 275, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982).

The Secretary's rule that counted retirement checks paid in the name of the Medicaid recipient as income available to him was not stated in the Medicaid regulations. Rather, it was the agency's interpretation of its own regulation (45 C.F.R. § 435.832). Such interpretations are entitled to controlling weight unless they are clearly erroneous or inconsistent with the statute or regulation. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 796, 63 L.Ed.2d 22 (1980); *Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority*, 888 F.2d 180, 186 (1st Cir.1989).

The Court holds that counting retirement payments, received by a Medicaid recipient in his name and admittedly paid for his retirement, as part of the retiree's "total income," was not clearly erroneous or inconsistent with the statute or regulation, and provided a reasonable evaluation of the applicant's income. The Medicaid regula-

tions required that applicants for Medicaid take all reasonable steps to obtain any pension, retirement or disability benefits to which they were entitled. 42 C.F.R. § 435.603. In light of this mandate, it was not clearly erroneous for the Secretary to consider these payments to be "income" to the applicant within the meaning of the Medicaid regulations. Moreover, the Secretary's interpretation is consistent with the regulations' provision for a potential spousal allowance and its authorization for the deeming of income between spouses.

The Court is aware of the difficulties faced by persons who were in Plaintiffs' position prior to the 1988 amendments; the Court is not convinced, however, that the statute's requirement of a reasonable evaluation of Mr. Whitehouse's income required Defendants to discount a portion of retirement payments received by him and count those as income to his spouse. The Court finds that the retirement payments rule is not arbitrary, capricious, or manifestly contrary to the statute. The regulations did not ignore the community spouse, but already allowed a portion of the recipient's income to be paid for his or her maintenance needs. 42 C.F.R. § 435.832(c)(2). The regulations provided a ceiling on the amount of the spousal maintenance allowance. *See infra* n. 6. Plaintiffs have not challenged the spousal maintenance provisions; furthermore, the Court of Appeals for the Seventh Circuit has upheld the spousal allowance provisions, and this Court finds its reasoning persuasive. *See Mattingly v. Heckler*, 784 F.2d 258 (7th Cir.1986) (holding that the spousal allowance regulation "establishes a reasonable and proper method of allocating limited Medicaid funds to those most in need and may neither be classified as arbitrary nor capricious.")

Plaintiffs contend that the retirement payments rule is invalid and that the Court must order the Secretary to provide another allocation of Mr. Whitehouse's income. Plaintiffs' complaint asserts that Mrs.

---

**8.** The state is required to follow regulations and guidelines promulgated by the federal Defendant as a condition of continued federal finan-

cial participation. The Court, therefore, analyzes the validity of the federal Defendant's rules.

Whitehouse cannot maintain her home on the amount prescribed by the spousal maintenance allowance; Plaintiffs also claim that Mrs. Whitehouse is entitled to an "equitable share" of her husband's income. Plaintiffs, in essence, are seeking an individual determination of Mrs. Whitehouse's needs, rather than a flat maintenance allowance as provided in the regulations. Moreover, to determine a community spouse's "equitable share" of an institutionalized spouse's income, the Secretary would have to take into account a myriad of factors in each individual case.

The Supreme Court has held that in administering the Medicaid program, such fact-finding determinations are not required. *Schweiker v. Gray Panthers,* 453 U.S. 34, 48, 101 S.Ct. 2633, 2642. In *Schweiker,* the court upheld Medicaid regulations promulgated by the Secretary that permitted a portion of the *community* spouse's income to be considered available to the institutionalized spouse. *Schweiker,* 453 U.S. at 48, 101 S.Ct. at 2642. The Court stated:

> The administration of public assistance based on the use of a formula is not inherently arbitrary. There are limited resources to spend on welfare. To require individual determinations of need would mandate costly fact-finding procedures that would dissipate resources that could have been spent on the needy.

*Schweiker,* 453 U.S. at 48, 101 S.Ct. at 2642 (citations omitted). It was not unreasonable for the Secretary to conclude that the individual fact-finding procedures sought by Plaintiffs "would dissipate resources that could have been spent on the needy." *Schweiker,* 453 U.S. at 48, 101 S.Ct. at 2642. The Court finds that the rule employed to evaluate Mr. Whitehouse's income was not arbitrary, capricious, unreasonable or outside the Secretary's statutory authority.

Plaintiffs next argue that because the Medicaid statute was silent on the question of ownership of income, state law should have controlled that determination. Plaintiffs rely heavily on *Washington v. Bowen,* 815 F.2d 549 (9th Cir.1987), for the proposition that the term "income," as used in federal statutes and regulations, should be defined under state law. In *Washington v. Bowen,* the Secretary rejected a state Medicaid plan submitted by the state of Washington that calculated an applicant's "income" with reference to the state's community property laws. The Court of Appeals for the Ninth Circuit, citing *United States v. Mitchell,* 403 U.S. 190, 197, 91 S.Ct. 1763, 1768, 29 L.Ed.2d 406 (1971), held that where federal law is silent as to the term "income," state law controls the definition of that term. The court therefore reversed the Secretary's disapproval of the state plan.

■ The Court finds *Washington v. Bowen* distinguishable.[9] Unlike the situation before that court, the state plan adopted by the Commissioner complied with the Secretary's rules and regulations. Moreover, the Maine legislature has enacted a statute which mandates that eligibility for state Medicaid assistance is "to be defined and determined in manners consistent with the requirements for the receipt of federal matching funds under Title XIX (42 U.S.C. § 1396 *et seq.*), or its successors, of the Social Security Act." 22 M.R.S.A. § 3174. Thus, the definition of "income," for Medicaid purposes, is necessarily the

---

9. However, the Court would not follow *Washington v. Bowen* even if it were to consider that case. *Bowen* relied on *United States v. Mitchell,* 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971), in which the Supreme Court held that because Congress did not define the term "income" of an individual in the Internal Revenue Code, the Court would look to state law to determine ownership of income. In enacting the Medicaid statute, Congress explicitly delegated to the Secretary the authority to prescribe standards for determining what income and resources were available to a Medicaid applicant for purposes of eligibility and assessments for cost of care. Those standards are to be given "legislative effect" and as such are entitled to considerable deference. *See Schweiker,* 453 U.S. at 48, 101 S.Ct. at 2642. The Court also notes that the Supreme Court did not apply state law when construing the term "income" in another public assistance statute, Aid to Families with Dependant Children (AFDC), 42 U.S.C. § 601, *et seq.,* but instead sought to ascertain the intent of Congress. *See Heckler v. Turner,* 470 U.S. 184, 194, 105 S.Ct. 1138, 1144, 84 L.Ed.2d 138 (1985).

same under Maine law as it is under the federal Medicaid statute and regulations.[10]

■ Plaintiffs also argue that the treatment of income employed by Defendants violated their federal constitutional rights. The Court notes that Plaintiffs "have failed to provide any statutory authority, much less case law support, for their assertion that 'the obligation of interspousal support is one of the fundamental privacy rights recognized under the Constitution.'" *Mattingly*, 784 F.2d at 269. Furthermore, the Court holds that Plaintiffs' attempt to obtain increased medical assistance is nothing more than a "'noncontractual claim to receive funds from the public treasury [which] enjoys no constitutionally protected status.'" *Mattingly*, 784 F.2d at 269, *quoting Weinberger v. Salfi*, 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1975). As discussed *infra*, the Court finds that the method of determining and allocating a fixed sum for spousal support is not arbitrary, capricious, irrational, or unreasonable. The distribution of public assistance under a vast program like Medicaid makes administrative rules "essential if a fund of this magnitude is to be administered with a modicum of efficiency...." *Califano v. Jobst*, 434 U.S. 47, 53, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1977). Congress and the Secretary might legitimately be concerned with dispensing limited Medicaid funds with as little administrative expense as possible to avoid "dissipating resources that could have been spent on the needy." *Schweiker*, 453 U.S. at 48, 101 S.Ct. at 2642. Classifying a Medicaid applicant/recipient's retirement payments as his or her own income is rationally related to that legitimate end. The Court finds no constitutional infirmity in the rules challenged by Plaintiffs, and thus the Court will dismiss their federal constitutional claims.

**c. Income Tax Withholdings**

■ Plaintiffs' next argument is that the Secretary's determination of the income available to Mr. Whitehouse was improper because that determination included withheld income taxes in the calculation. Plaintiffs argue that withheld income taxes are not actually available to an individual and that therefore the Secretary's practice of counting them as income was invalid.

The Court finds no merit in Plaintiffs' contention. The Supreme Court has considered a similar issue in the context of the Aid to Families with Dependent Children program. *See Heckler v. Turner*, 470 U.S. 184, 200–202, 105 S.Ct. 1138, 1147–48, 84 L.Ed.2d 138 (1985). The *Turner* court discussed the "availability" principle and concluded that mandatory tax withholdings are available income for AFDC purposes. Similarly, this Court holds that Defendants could interpret available income under the Medicaid statute as including mandatory tax withholdings.[11]

**d. Plaintiffs' State Law Claims**

Finally, Plaintiffs contend that the state Defendant has failed to implement applicable state law, 22 M.R.S.A. § 3174. That section provides in pertinent part:

If a recipient of assistance under this chapter who resides in an intermediate care facility or a skilled nursing facility has a spouse dependant on that recipient for support, the department shall permit the recipient to transfer $210 a month from his income to the spouse.

Plaintiffs also allege that the state Defendant's rules violate Article I of the Maine Constitution. The state Defendant, in its Motion to Dismiss and accompanying memorandum, provides no argument whatsoever on these state law claims, and the Court is reluctant to dismiss them for that reason.

In sum, the Court holds that the retirement payments rule, employed by Defen-

---

**10.** Plaintiffs contend that *Lewis v. Petit*, No. CV–85–503 (Me.Sup.Ct.1986) a case decided by the Maine Superior Court, shows that the determination of Mr. Whitehouse's income would have been different under Maine law. That case is inapposite, however, because its decision

rested on an interpretation of federal law, not state law.

**11.** *Moreover, Plaintiffs allege in their complaint that the state Defendant allowed Mr. Whitehouse an offset for payment of income taxes.*

dants to evaluate Mr. Whitehouse's retirement income, was not contrary to the Medicaid statute, Medicaid regulations or the federal constitution. Moreover, it was permissible for Defendants to consider mandatory tax withholdings as income available Mr. Whitehouse. The Court thus dismisses these claims against the state Defendant. The state Defendant, however, has provided no argument in support of its motion to dismiss Plaintiffs' state law challenges to the Medicaid rules, and thus the Court denies the Motion to Dismiss with respect to those claims.

Accordingly, it is ORDERED that Defendants' Motion to Dismiss be, and it is hereby, GRANTED in part.

So Ordered.