**James B. EMERSON, individually and on behalf of all others similarly situated, Appellee,**

**v.**

**Natalie Haas STEFFEN, in her official capacity as Commissioner of the Minnesota Department of Human Services, Appellant,**

**Louis W. Sullivan, M.D., in his official capacity as Secretary of the United States Department of Health and Human Services.**

**James B. EMERSON, individually and on behalf of all others similarly situated, Appellee,**

**v.**

**Natalie Haas STEFFEN, in her official capacity as Commissioner of the Minnesota Department of Human Services,**

**Louis W. Sullivan, M.D., in his official capacity as Secretary of the United States Department of Health and Human Services, Appellant.**

**Nos. 91–1837, 91–1840.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1991.

Decided March 20, 1992.

Patricia A. Sonnenberg, Asst. Atty. Gen., St. Paul, Minn., argued for appellant, Natalie Haas Steffen.

Robert D. Kamenshine, Dept. of Justice, Washington, D.C., argued (William Kanter, appeared on brief), for appellant Louis W. Sullivan, M.D.

Laurie N. Davison, Minneapolis, Minn., argued (Patricia M. Siebert, appeared on brief), for appellee.

Before LAY, Chief Judge,* ARNOLD, Circuit Judge,** and STUART,*** Senior District Judge.

ARNOLD, Circuit Judge.

The plaintiff in this class action[1] brought suit challenging a certain feature of Minnesota's Medicaid plan. Plaintiff's only income is $863 a month in social-security disability benefits. A divorce decree requires him to pay $200 a month for the support of his children. Medicaid eligibility depends on what income and resources are "available." 42 U.S.C. § 1396a(a)(17)(B). Minnesota's Medicaid plan treats the $200 plaintiff receives, but then must pay in child support, as "available" to him. It must therefore be counted for purposes of determining his Medicaid eligibility. The question presented is whether this aspect of the Minnesota plan violates the statute by treating as "available" income that really is not. The District Court held that it does and granted summary judgment for the plaintiff. *Emerson v. Wynia*, 754 F.Supp. 705 (D.Minn.1991). The Secretary of the United States Department of Health and Human Services, who wishes the State plan upheld, appeals. The District Court's interpretation of the statute is reasonable, but so is the Secretary's. We therefore reverse.

I.

The Medicaid program was enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, as a jointly financed federal-state program designed to provide health care to needy individuals. Although a state is not required to participate in Medicaid, a state that does so must develop a plan that complies with the Medicaid Act and the Secretary's regulations.

Participating states must provide assistance to the "categorically needy." 42 U.S.C. § 1396a(a)(10)(A). This group includes individuals eligible for cash assistance under the Supplemental Security Income (SSI) program or the Aid to Families with Dependent Children (AFDC) program. States may also provide assistance to the "medically needy"—people who can't pay for their medical expenses, but whose income is too great to enable them to qualify

---

* The Hon. Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

** The Hon. Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

*** The Hon. William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. This action was filed on November 29, 1989, by plaintiff James B. Emerson against Ann Wynia, then the Commissioner of the Minnesota Department of Human Services. Defendant Wynia moved for the inclusion of Louis W. Sullivan, Secretary of the United States Department of Health and Human Services (Secretary) as a necessary party. The motion was granted. Additionally, on plaintiff's motion, the District Court certified the action as a class action under Fed.R.Civ.P. 23.

for the "categorically needy" program. In either case, the Act requires states to adopt standards for determining eligibility for Medicaid which

> provide for taking into account only such income and resources as are, *as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient* and ... as would not be disregarded ... in determining his eligibility for [SSI or AFDC].

42 U.S.C. § 1396a(a)(17)(B) (emphasis ours). The meaning of the word "available" is the crux of this case. We must decide what income is available and thus countable in determining eligibility for Medicaid.

The State of Minnesota provides medical assistance to both the categorically needy and the medically needy. The plaintiff class in this case is made up of medically needy, as opposed to categorically needy, individuals who either have been or will be denied or cut off from medical assistance because of Minnesota's policy of considering child support paid by applicants or recipients as income "available" to them. The plaintiffs claim that Minnesota's plan and the Secretary's support of that plan conflict with the plain language of 42 U.S.C. § 1396a(a)(17)(B), its legislative history, and post-enactment legislation.

## II.

Before delving into a statutory analysis, we must determine the proper standard of review. How much deference should an agency get in construing a statute it administers? The Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), made it very clear that so long as the agency's interpretation is a reasonable one, it must be upheld. To reach that conclusion, the *Chevron* Court asked and answered two questions: First,

has Congress directly spoken on the issue at hand? If it has not, courts cannot simply replace the agency's interpretation with their own preferred construction of the statute. Second, is "the agency's answer ... based on a permissible construction of the statute"? *Id.* at 843, 104 S.Ct. at 2782. If it is, we must defer to the agency. Such deference is particularly important here, in light of the fact that the statute in question expressly delegates to the Secretary the power to prescribe standards for determining availability. In *City of St. Louis v. Department of Transportation,* 936 F.2d 1528, 1533 (8th Cir.1991), we summarized the law by saying that the agency's judgment would not be disturbed "unless it [was] arbitrary, capricious, or an abuse of discretion."[2]

## III.

Plaintiffs argue that the statute, by its plain language, supports their view of congressional intent, that available income does not include court-ordered child-support payments. Consequently, they continue, we need never reach the second question in *Chevron*—whether the Secretary's interpretation is reasonable—since Congress has spoken on the matter. To support their claim that the statute's language is clear and unambiguous, they use Webster's Third New International Dictionary, which defines available as "such as may be availed of; capable of use for the accomplishment of a purpose...." Appellees' Brief 11. While we do not dispute the correctness of this definition, we do not believe that our agreement with the dictionary necessitates agreement with the plaintiffs. If it did, it would be hard to know how to draw the line in allowing exclusions from available income. True, as plaintiffs state, income which has been paid out in child support cannot later be "used" or

---

**2.** Consider how different the law and the outcome of this case would be if the Administrative Procedure Act were amended to provide simply that courts will decide questions of law for themselves, instead of deferring to administrative agencies' alleged "expertise." A proposal looking in this direction, known as the Bumpers Amendment, has passed the Senate twice, but has not been approved by the House of Representatives. S. 1477, 96th Cong., 1st Sess., passed the Senate on October 30, 1979. 125 Cong.Rec. 30102. The Bumpers Amendment had previously been agreed to. 125 Cong.Rec. 23504 (Sept. 7, 1979). S. 1080, 97th Cong., 2d Sess., passed the Senate on March 24, 1982. 128 Cong.Rec. 5297.

"availed of" to pay another bill, but neither can income which has been paid out for groceries. Although maybe different in kind, the two are both obligations of the person making the payments. To say that income paid out in child support is not "available income" because it is no longer available to meet the payor's needs begs the question. Did Congress intend to imply the phrase "to meet the payor's needs," and if so, what obligations are considered needs of the payor? One could reasonably argue that supporting his children is one of the payor's needs. At any rate, the statute itself does not rule out such an argument.

## IV.

Having concluded that Congress has not directly addressed the issue of availability, we venture to step two in the *Chevron* analysis: whether the Secretary's policy of including child-support payments when determining available income is based on a permissible construction of the statute. That is, is it reasonable? The plaintiffs argue, and the District Court held, that the legislative history, in stating that only income which is "actually available" should be considered in determining eligibility, indicated Congress's intent to exclude court-ordered child-support payments from income. We disagree.

The Senate Report the plaintiffs rely on states in pertinent part:

> Another provision is included that requires States to take into account only such income and resources as (determined in accordance with standards prescribed by the Secretary), are actually available to the applicant or recipient and as would not be disregarded.... Income and resources taken into account, furthermore, must be reasonably evaluated by the States. These provisions are designed so that the States will not assume the availability of income which may not, in fact, be available or overevaluate income and resources which are available. *Examples of income assumed include support orders from absent fathers[ ] which have not been paid or contributions from relatives which are not in reality received by the needy individual.*

S.Rep. No. 404, 89th Cong., 1st Sess. 78 (1964), *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 2018 (emphasis ours). This passage suggests that Congress was concerned not with whether income received and then paid out by a Medicaid recipient was available, but rather with whether income deemed received had actually been received by, and therefore was actually available to, the recipient. In our opinion, the legislative history supports the Secretary's construction, not the plaintiffs'.

Although admitting that Congress expressly delegated to the Secretary authority to prescribe standards for determining availability, the plaintiffs argue that the Secretary has not promulgated any regulations on the subject and thus that his position is not entitled to "legislative effect." Appellees' Brief 32. First, we do not agree with the plaintiffs that the Secretary has not promulgated any relevant regulations. Furthermore, even if we did, neither *Chevron* nor *City of St. Louis* requires that the agency's position be stated in a regulation to be entitled to deference.

The Secretary has promulgated several regulations governing eligibility standards for the medically needy.

**§ 435.851 Treatment of income and resources: Reasonableness.**

(a) The [state] agency must use a methodology for the treatment of income and resources, to determine eligibility of the medically needy, that is reasonable.

(b) The methodology used to determine eligibility of individuals in the cash assistance program related to the covered medically needy group [e.g., SSI] is presumed to be reasonable.

**§ 435.401 General rules.**

(a) . . .

(c) The agency must not use requirements for determining eligibility for optional coverage groups that are—

(1) For families and children, more restrictive than those used under the State's AFDC plan; and

(2) For aged, blind, and disabled individuals, more restrictive than those used under SSI....

42 C.F.R. §§ 435.851 and 435.401 (1990). Although not directly defining the term "available," the regulations make it plain that since neither the AFDC program nor the SSI program requires the exclusion of child-support payments when determining eligibility,[3] states do not have to exclude these payments from income when determining Medicaid eligibility (though they may choose to do so).

The plaintiffs also point to a discussion of a proposed amendment to the Medicaid Act to support their view of Congress's intent. The specific discussion referred to is in a 1986 House Budget Committee Report describing a proposed amendment to 42 U.S.C. § 1396a(a)(17)(B). The relevant portion of the report states:

> It has come to the Committee's attention that HCFA is attempting to prohibit some States from treating the income used to pay spousal and child support payments as unavailable to aged, blind, and disabled Medicaid beneficiaries when determining their income.
>
> \* \* \* \* \* \*
>
> The Committee finds HCFA's position untenable. The Committee fails to understand how income which must, by law, be used for the support of someone other than the Medicaid beneficiary can be "available" to him or her. The very purpose of a requirement at section 1902(a)(17)(B) of the Act that States take into account only such income and resources as are available is to prevent them from including in income the actual

amounts that an applicant or beneficiary is legally compelled to use for someone else's support.

H.R.Rep. No. 727, 99th Cong., 2d Sess. 109–10, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3607, 3699. There are two problems with the plaintiffs' argument. First, the amendment was never enacted into law. It was rejected in conference. The very fact that such an amendment was proposed and rejected shows that Congress was aware of the Secretary's interpretation of the statute and did not wish to change it. Second, even if the amendment had passed, it would have only allowed states to treat support payments as unavailable. It would not have forced them to do so.

Legislation enacted in 1988 which allowed states to adopt methodologies less restrictive than those used in the cash-assistance programs also lends more credence to the Secretary's view than to the plaintiffs'. The House Report on this legislation listed several less restrictive methodologies that states could establish. One such methodology suggested treating income used to pay court-ordered child support as unavailable to the payor for purposes of determining eligibility. H.R.Rep. No. 391(I), 100th Cong., 1st Sess. 505, *reprinted in* 1987 U.S.Code Cong. & Admin.News 2313–1, 2313–325. This Report indicates Congress's intent only to permit, rather than command, states to exclude such payments from available income.

Finally, the plaintiffs and the District Court rely on a Ninth Circuit case, *Department of Health Services, State of California v. Secretary of HHS*, 823 F.2d 323 (9th Cir.1987) (*DHS*). In *DHS* the Secretary argued that California could not choose to

---

**3.** In attempting to clear up misconceptions and answer questions about SSI, the Social Security Administration stated that

> it has been longstanding SSI policy that amounts withheld from earned and unearned income for payment of a debt or other legal obligation are included in income for purposes of determining eligibility and payment amount under the SSI program.

56 Fed.Reg. 3211 (1991).

In response to a comment which drew a distinction between court-ordered support obligations and other legal debts, the agency remarked:

> While we do not disagree that there are distinctions between a debtor/creditor relationship and the obligation to pay alimony, the overall result, we believe, is basically the same; i.e., the payer benefits financially from the satisfaction of the debt/obligation. It is not the purpose of the SSI program to subsidize any types of indebtedness whether that indebtedness results from a debtor/creditor relationship or from an obligation imposed by public policy.

*Ibid.*

exclude court-ordered child-support payments from available income. The basis for his argument was the fact that SSI did not allow this practice, and Medicaid eligibility standards were required to mirror the methodology set forth in the SSI Act and its regulations. The court rejected the Secretary's "same methodology" argument and held that court-ordered child support could not be used to reduce the recipients Medicaid benefits. We decline to follow the Ninth Circuit for several reasons. First, the court decided *DHS* before the law was changed to allow states to adopt less restrictive methodologies than those governing AFDC and SSI. Second, the court did not set forth any analysis of 42 U.S.C. § 1396a(a)(17)(B) or its legislative history. And finally, unlike Minnesota, in *DHS* the State of California chose to exclude the payments from countable income. While we agree that a state may choose to exclude these payments, we do not agree that it must do so.

### V.

We are not free to legislate. The balancing of all of the interests involved must be, and we assume has been, undertaken by Congress. Therefore, mindful of the limits on this Court's review of an agency's construction of a statute it has the power to administer, we hold that the Secretary's construction of 42 U.S.C. § 1396a(a)(17)(B) is a permissible one. Accordingly, we reverse the decision of the District Court and remand for proceedings consistent with this opinion.