977 F.2d 484
 61 USLW 2227, Medicare & Medicaid Guide P 40,858
 Melvin PEURA, by and through his guardian, Bill HERMAN and
Astrid Peura, Plaintiff-Appellant,
v.
Theodore A. MALA*; State of Alaska,
Defendant-third-party-plaintiffs-appellees,
v.
Louis W. SULLIVAN, M.D., Third-party-defendant-appellee.
 No. 90-35724.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 22, 1991.
Decided Oct. 9, 1992.
 
 Mark Regan, Alaska Legal Service Corp., Juneau, Alaska, for plaintiff-appellant.
 Deborah E. Behr, Asst. Atty. Gen., Juneau, Alaska, for defendants-appellees, State of Alaska.
 John S. Koppel, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees, Secretary of Health and Human Services.
 Appeal from the United States District Court for the District of Alaska.
 Before: TANG, REINHARDT, and RYMER, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 Melvin Peura appeals the district court dismissal of his federal and state law claims against the Commissioner of Alaska's Department of Health and Social Services and the State of Alaska. Peura challenges the denial of his claim that, in determining the amount of his income to be contributed to his health care, state administrators of Alaska's Medicaid program should exclude the entire amount Peura must pay to support a minor pursuant to a state court divorce decree, and also the amount withheld by the government from his federal disability pension to pay income taxes. We affirm.
 
 I.
 A.
 
 2
 Because this appeal concerns only issues of law, little need be said about the facts giving rise to the controversy. Suffice it to say that Melvin Peura is an institutionalized recipient of Medicaid. He is divorced and, pursuant to an Alaska state court decree, he is obligated to pay approximately $300 of his monthly income to insurers and his ex-wife, in support of a minor-age daughter.[1] Peura's monthly income of approximately $1100 derives from a federal disability pension, which is subject to withholding by the federal government of almost $150 per month for the purpose of paying income tax.
 
 B.
 
 3
 "Medicaid, enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., is a cooperative federal-state endeavor designed to provide health care to needy individuals. A state is not required to participate in Medicaid, but once it chooses to do so, it must create a plan that conforms to the requirements of the Medicaid statute and the federal Medicaid regulations." Department of Health Servs. v. Secretary of Health & Human Servs., 823 F.2d 323, 325 (9th Cir.1987) (citations omitted).
 
 
 4
 The State of Alaska has opted to participate in the Medicaid program. In 1988, state Medicaid administrators determined that, in computing the amount Peura should contribute to the cost of his health care, certain amounts not previously included as income available to Peura would be considered in present and future calculations. Specifically, both the amount withheld for federal tax purposes from Peura's pension payouts and the amount Peura was required to pay for child support (less a certain allowance based on Alaska's "Adult Not Included in Household" ("ANI") grant standard normally used in administering the Aid to Families with Dependent Children ("AFDC") program) were to be included. The state administrators so concluded after consulting with the United States Department of Health and Human Services.[2] Under this determination, Medicaid now pays significantly less to the Island View Manor nursing home, the institution where Peura resides.
 
 
 5
 After unsuccessfully challenging the reduction in Medicaid benefits through state administrative channels, Peura brought the present suit against the state Medicaid administrator and the State of Alaska in state court. Peura pleaded claims for payment of accumulated unpaid benefits and for declaratory and injunctive relief under 42 U.S.C. § 1983, the Alaska state constitution, and an Alaska state statute. The state defendants then filed a third-party complaint against the federal Secretary of Health and Human Services ("Secretary") seeking to recover the federal government's share of whatever Peura recovered from the state defendants. The third-party complaint also sought to have the federal defendant bound by any declaratory or injunctive relief entered against the state defendants on behalf of Peura. Pursuant to 28 U.S.C. §§ 1441(a), 1442(a)(1), the Secretary removed the entire action to federal court.
 
 
 6
 On June 29, 1990, the district court granted in part the state defendants' motion for summary judgment against Peura. The court ruled that Peura's state law claims were completely barred by the Eleventh Amendment, as was Peura's section 1983 claim for unpaid benefits, and dismissed these claims rather than remanding them to the state court.
 
 
 7
 The district court considered on its merits the claim for prospective relief under section 1983, rejected Peura's arguments, and granted summary judgment in favor of the state defendants in a memorandum and order filed August 13, 1990. Simultaneously, the court entered judgment from which Peura timely appeals.[3]
 
 II.
 
 8
 The district court ruled that the State of Alaska did not contravene the federal Medicaid statute by including the disputed amounts in determining the amount of income Peura had available to spend on his health care. In reviewing the district court's decision on summary judgment, we apply the same legal standards as did the district court. See, e.g., Scholar v. Pacific Bell, 963 F.2d 264, 266 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 196, 121 L.Ed.2d 139 (U.S.1992). Thus, in assessing the propriety of the state's reliance on the Secretary and his regulations, the interpretation of the Medicaid statute rendered by the Secretary is relevant and entitled to deference. Department of Health Services, 823 F.2d at 326. The Secretary's interpretation will not be sustained, however, if it conflicts with the Medicaid statute. Id.
 
 
 9
 The dispute in this case centers on whether two particular amounts, (A) the amount Peura pays in child support that exceeds the allowance provided by the state defendants, and (B) the amount withheld by the federal government to pay income taxes, are "available" to Peura for purposes of contributing to his health care. Peura contends that neither amount is available; the state and federal defendants argue that the Secretary could properly rule that both are available. Our review of the Secretary's definition of "available income" is "limited to ensuring that he did not exceed his statutory authority and that his regulation is not arbitrary or capricious." Smith v. Concannon, 951 F.2d 178, 181 n. 1 (9th Cir.1991).
 
 A.
 
 10
 Although the facts are quite similar, this case presents a different question concerning child support payments than the one recently answered in Emerson v. Steffen, 959 F.2d 119 (8th Cir.1992). In Emerson, criteria used to determine eligibility and extent of assistance under Minnesota's Medicaid implementation plan included as income available to a Medicaid recipient money the recipient was obligated to pay as child support under a divorce decree.[4] Unlike the present case, there was absolutely no child support allowance provided to the recipient under the Minnesota plan. Instead, Minnesota assumed that all of the child support money remained available to the recipient. Consequently, Minnesota counted all of the child support money in determining eligibility for and the extent of Medicaid benefits under the state's plan.
 
 
 11
 The Medicaid recipient in Emerson argued, as in the present case, that Minnesota's treatment of child support obligations contravened 42 U.S.C. § 1396a(a)(17)(B). This provision requires that
 
 
 12
 [a] A State plan for medical assistance must-
 
 
 13
 ....
 
 
 14
 ... include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ... provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and (in the case of any applicant or recipient who would, except for income and resources, be eligible for aid or assistance in the form of money payments under any plan of the State approved under [various federal programs] or to have paid with respect to him [federal] supplemental security income benefits ...) as would not be disregarded (or set aside for future needs) in determining his eligibility for such aid, assistance, or benefits [.]
 
 
 15
 (Emphasis added.) In other words, in determining both eligibility and the extent of assistance, state Medicaid programs can only attribute to applicants and recipients income which is (1) "available to the applicant or recipient" and (2) neither "disregarded" nor "set aside for future needs" pursuant to various welfare programs, provided that the applicant or recipient meets the non-financial eligibility criteria for those programs.
 
 
 16
 Like Peura, the Medicaid recipient in Emerson did not argue that his child support payments fell within the second element of the statute's limitation on income that may be taken into account. That is, neither plaintiff argued that he met the non-financial eligibility criteria under any of the "aid, assistance, or benefits" programs specified in section 1396a(a)(17)(B) and that his child support payments would be "disregarded" or "set aside for future needs" under such programs.
 
 
 17
 Instead, both Peura and the plaintiff class in Emerson relied on the first element of the statutory limitation on income. Specifically, the Emerson plaintiffs argued that, in taking into account the entire amount of money a Medicaid applicant or recipient must pay in child support, Minnesota's plan improperly treated such funds as "available" to the applicant or recipient.
 
 
 18
 The Eighth Circuit rejected this argument and reversed the district court's decision. Emerson, 959 F.2d at 124, rev'g Emerson v. Wynia, 754 F.Supp. 705 (D.Minn.1991); see also Himes v. Sullivan, 779 F.Supp. 258 (W.D.N.Y.1991), aff'd mem., 956 F.2d 1159 (2d Cir.1992). In doing so, the appellate court concluded that the statutory language was ambiguous:
 
 
 19
 True, as plaintiffs state, income which has been paid out in child support cannot later be "used" or "availed of" to pay another bill, but neither can income which has been paid out for groceries. Although maybe different in kind, the two are both obligations of the person making the payments. To say that income paid out in child support is not "available income" because it is no longer available to meet the payor's needs begs the question. Did Congress intend to imply the phrase "to meet the payor's needs," and if so, what obligations are considered needs of the payor? One could reasonably argue that supporting his children is one of the payor's needs [such that funds used to support the children are properly considered "available"]. At any rate, the statute itself does not rule out such an argument.
 
 
 20
 959 F.2d at 121-22 (emphasis added).
 
 
 21
 Accordingly, the Emerson court turned to the statute's legislative history. There, the Eighth Circuit found that when Congress enacted the availability criterion set forth in section 1396a(a)(17)(B), it "was concerned not with whether income received and then paid out by a Medicaid recipient was available, but rather with whether income deemed received had actually been received by, and therefore was actually available to, the recipient." Id. at 122 (discussing S.Rep. No. 404, 89th Cong., 1st Sess. 78 (1964), reprinted in 1965 U.S.C.C.A.N. 1943, 2018). Looking to legislation enacted twenty-three years after the availability criterion was passed, the court further indicated that "Congress[ ] inten[ded] only to permit, rather than [to] command, states to exclude [child support] payments from available income." Id. at 123.
 
 
 22
 We need not decide whether to follow the Eighth Circuit because the present case does not involve a situation like Minnesota's plan where funds destined for child support are nevertheless deemed entirely available to the Medicaid applicant or recipient. Instead, in the present case, we are faced with a situation where Alaska takes into account only a portion of the funds Peura must spend on child support in calculating the extent of Peura's Medicaid benefits. Unlike the Minnesota plan in Emerson, the federal regulation applicable to Peura provides an allowance for child support payments such that income spent on court-ordered child support, up to the amount of the allowance, is not considered "available to the applicant or recipient" for purposes of assessing Medicaid eligibility and extent of benefits.
 
 
 23
 Further simplifying matters is the fact that Peura does not challenge the amount of the child support allowance provided to him. Cf. Schweiker v. Gray Panthers, 453 U.S. 34, 49 n. 21, 101 S.Ct. 2633, 2643 n. 21, 69 L.Ed.2d 460 (1981); infra note 7.[5] Instead, the essence of his argument is that our decision in Department of Health Servs. v. Secretary of Health & Human Servs., 823 F.2d 323 (9th Cir.1987) ("DHS"), mandates that no amount of income expended on court-ordered child support is "available" within the meaning of section 1396a(a)(17)(B). We disagree with this reading of our 1987 decision.
 
 
 24
 In DHS, we rejected the Secretary's interpretation of section 1396a(a)(17)(B) as requiring participating states to adopt Medicaid plans like Minnesota's that treat income spent on court-ordered child support as entirely "available" for purposes of determining eligibility and extent of benefits. We therefore upheld a California Medicaid plan that sought to exclude at least some portion of court-ordered child support payments from "available" income.
 
 
 25
 DHS did not involve a situation, such as in Emerson or the present case, where the Secretary was supporting the state's efforts to exclude from "available" income at least a portion of child support payments. Therefore, contrary to Peura's reading of the case, the issue decided in DHS was not whether California was required to exclude child support payments. The only matter settled by the case was whether California was permitted to do so. See DHS, 823 F.2d at 327-28 (rejecting Secretary's argument "that the absence of an express income exclusion for child or spousal support in the SSI statute precludes a state from creating an exclusion in Medicaid"). The holding in DHS therefore offers Peura no support for his argument that Alaska must exclude the entire amount of court-ordered child support payments.
 
 
 26
 Dicta appearing in DHS does offer Peura some support, however. Looking to our earlier decision in Whaley v. Schweiker, 663 F.2d 871 (9th Cir.1981), we declared in DHS that "income that a Medicaid recipient uses to pay court-ordered child support or alimony cannot be used to reduce the recipient's Medicaid benefits." DHS, 823 F.2d at 328 (footnote omitted); see also Martin v. Sullivan, 932 F.2d 1273, 1277 (9th Cir.1990) (identifying as dicta the analysis of Whaley appearing in DHS ), cert. denied, --- U.S. ----, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991); Cervantez v. Sullivan, 963 F.2d 229, 233-34 (9th Cir.1992) (following Martin's analysis of DHS ). Now that we are confronted with the issue, however, we find that Whaley does not support such a broad proposition.
 
 
 27
 The issue in Whaley was whether, in determining a recipient's continuing eligibility to receive supplemental security income, the Secretary properly included as income available to the recipient an increase in veterans' benefits provided for the support of the recipient's minor children. 663 F.2d at 872. The Secretary's own decision to exclude from the recipient's income other benefits intended for child support strongly influenced our decision to reject the Secretary's position regarding veterans' benefits intended for child support. See id. at 874. But we also looked to Congress's intent that both veterans' benefits and supplemental security income "help families ... to maintain minimally adequate income levels." Id. With this purpose underlying Congress's determination of each of the amounts involved, we concluded that the Secretary's position would "encourage either the forced separation of the family or the veteran to use for his own subsistence funds that were intended for his children." Id. at 875.
 
 
 28
 Our decision in Whaley does not control here because we have no reason to believe that, in determining the amount of child support owed by Peura, the divorce court took into account the purposes and limitations of the Medicaid program. Indeed, it is questionable whether this would have been an appropriate consideration for the court.[6] The fact that the court has "earmark[ed] a portion of [Peura's income] as a child's benefit," Whaley, 663 F.2d at 874, is not in itself a sufficient reason for applying the rule established in Whaley. Missing here is any indication that the entire amount of Peura's court-ordered obligation was earmarked to advance an identified congressional purpose.
 
 
 29
 Indeed, we think it unlikely that Congress would intend the full amount of any child support obligation to be excluded from the "available" income of a Medicaid applicant or recipient simply because the amount has been ordered by a court. Such an approach could easily lead to unintended subsidization of a disproportionate amount of health care benefits. Cf. Emerson, 959 F.2d at 123 n. 3 (noting Secretary's concern that excluding from income amounts used to meet court-ordered obligations may lead to subsidization of such obligations); Cervantez, 963 F.2d at 235 (raising subsidization issue); Martin, 932 F.2d at 1278 (same); Andrew Bates, Golden Girls, The New Republic, Feb. 3, 1992, at 17 (describing practice of structuring assets in a manner which permits otherwise ineligible applicants to receive Medicaid); Correspondence, The New Republic, Mar. 30, 1992, at 4, 5 (publishing exchange of views over Bates article).[7]
 
 
 30
 Another dictum in DHS also supports Peura's position. See Cervantez, 963 F.2d at 234 n. 10 (referring to second dictum in DHS ). After pointing out that, in some instances, the Secretary takes into account as income the receipt of child support payments, we noted in DHS that, by also seeking to take into account as income money paid as child support, "the Secretary seeks to count the income twice." 823 F.2d at 328. However, we opined that "the income is available to only one person, either the payor or the payee," and that, because "Congress has determined that the income should be attributed to the payee," the Secretary wrongly considered the payments as income also available to the payor. Id.
 
 
 31
 The problem with this analysis, however, is that it ignores the ambiguity ably identified by the Eighth Circuit in Emerson:To say that income paid out in child support is not "available income" because it is no longer available to meet the payor's needs begs the question. Did Congress intend to imply the phrase "to meet the payor's needs," and if so, what obligations are considered needs of the payor?
 
 
 32
 959 F.2d at 122. If child support is considered a need of the payor, and arguably it is, then the Secretary may attribute the money as income to both the payor and, in due course, the payee.
 
 
 33
 We are not convinced that the legislative history forecloses this interpretation of the Medicaid statute. The only historical material cited by Peura that appears to negate this interpretation is a 1986 House Budget Committee report:
 
 
 34
 The Medicaid statute provides that, in determining eligibility, States take into account only such income and resources as are "available" to the applicant or recipient, in accordance with standards prescribed by the Secretary. It has come to the Committee's attention that [the Health Care Financing Administration] is attempting to prohibit some States from treating the income used to pay spousal and child support payments as unavailable to aged, blind, and disabled Medicaid beneficiaries when determining their income....
 
 
 35
 The Committee finds HCFA's position untenable. The Committee fails to understand how income which must, by law, be used for the support of someone other than the Medicaid beneficiary can be "available" to him or her. The very purpose of a requirement at [42 U.S.C. § 1396a(a)(17)(B) ] of the Act that States take into account only such income and resources as are available is to prevent them from including in income the actual amounts that an applicant or beneficiary is legally compelled to use for someone else's support.
 
 
 36
 ....
 
 
 37
 To clarify this situation, the Committee bill makes explicit that, in determining the income and resources of an individual who is in an institution, the individual shall not be considered to have available to him or her income or resources which are required to be paid undert [sic] court order for the support of the individual's spouse or child, up to the amount required by the court order.
 
 
 38
 H.R.Rep. No. 727, 99th Cong., 2d Sess. 109-110, reprinted in 1986 U.S.C.C.A.N. 3607, 3699-3700.
 
 
 39
 While the proposed legislation discussed by the House committee apparently would have resolved the ambiguity existing in section 1396a(a)(17)(B), it was not included in the bill finally passed by Congress. See H.R.Conf.Rep. No. 1012, 99th Cong., 2d Sess. 399; reprinted in 1986 U.S.C.C.A.N. 3868, 4044. Although the Eighth Circuit attached some importance to this fact, see Emerson, 959 F.2d at 123, we do not. Because the proposed legislation was omitted from the conference agreement, see id., and was not passed upon by Congress, we find little significance in the legislation's failure to become law. See Slaven v. BP America, Inc., 973 F.2d 1468, 14 (9th Cir.1992) ("[a]bsent a vote on the proposed language, no basis exists for inferring a congressional rebuff").
 
 
 40
 Ultimately, we read the House committee report as simply confirming the view that the Medicaid statute is ambiguous on whether the entire amount of court-ordered child support payments must be considered unavailable income. Because the second dictum appearing in DHS fails to recognize this ambiguity, we decline to adopt the dictum as our holding.
 
 
 41
 Instead, in view of the lack of controlling precedent, the apparent ambiguity of the Medicaid statute, and the high degree of deference owed the Secretary's application of the availability principle, we conclude that Alaska has not contravened the Medicaid statute in following 42 C.F.R. § 435.725 and taking into account as income available to Peura a portion of funds used to provide court-ordered child support.
 
 B.
 
 42
 Peura also contends that the state Medicaid administrators' decision to take into account funds withheld from Peura's federal pension to pay income taxes violates the Medicaid statute. Peura's argument, however, depends on his reading of DHS as creating a broad "actual availability" principle. As we have indicated here, however, DHS does not support such a rule. See also Martin, 932 F.2d at 1277. Even if it did, however, Peura has not demonstrated that the money withheld from his pension remains forever unavailable to him.
 
 
 43
 We are also persuaded by the Supreme Court's decision in Heckler v. Turner, 470 U.S. 184, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985), that Alaska's treatment of income tax withholding is consistent with the Medicaid statute's availability principle. In Turner, the Supreme Court indicated that the availability principle underlying administration of the AFDC program is motivated by the same concerns as section 1396a(a)(17)(B). In both cases, the principle "serve[s] primarily to prevent the States from conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes nonexistent resources to recipients." Turner, 470 U.S. at 200, 105 S.Ct. at 1147. Compare id. with Emerson, 959 F.2d at 122. The Turner Court concluded that, for purposes of the AFDC program, tax withholding did not render unavailable the income withheld. 470 U.S. at 199-202, 105 S.Ct. at 1146-1148. We believe the same conclusion obtains here. See also Himes, 779 F.Supp. at 265-66; Whitehouse v. Ives, 736 F.Supp. 368, 374 (D.Me.1990).
 
 III.
 
 44
 The Secretary's definition of availability as it affects Peura is not arbitrary, capricious or in excess of the Secretary's authority. The judgment of the district court is therefore
 
 AFFIRMED.[8]
 
 
 *
 Pursuant to Fed.R.App.P. 43(c), Theodore A. Mala is hereby substituted for his predecessor, Myra Munson, as the named Commissioner of the Department of Health and Social Services, State of Alaska
 
 
 [1]
 At one time Peura was also obligated to provide support for his other two children. However, Peura's obligation under the divorce decree to provide for these children expired when they reached the age of twenty-two
 
 
 [2]
 Federal officials apparently informed the Alaska Medicaid administrators that federal regulations did not provide for excluding tax withholding from a Medicaid recipient's income and that 42 C.F.R. § 435.725(c)(3) provided for only a limited child support exclusion based on the "maintenance needs" of Peura's family
 Section 435.725 provides in pertinent part:
 Post-eligibility treatment of income and resources of institutionalized individuals: Application of patient income to the cost of care.
 (a) Basic rules.... The [state Medicaid] agency must reduce its payment to an institution, for services provided to an individual ... by the amount that remains after deducting the amounts specified in paragraphs (c) and (d) of this section, from the individual's total income....
 ....
 (c) Required deductions. In reducing its payment to the institution, the agency must deduct the following amounts ... from the individual's total income....
 ....
 (3) Maintenance needs of family. For an individual with a family at home, an additional amount for the maintenance needs of the family. This amount must--
 (i) Be based on a reasonable assessment of their financial need;
 (ii) Be adjusted for the number of family members living in the home; and
 (iii) Not exceed the higher of the need standard for a family of the same size used to determine eligibility under the State's AFDC plan or the medically needy income standard established under Subpart I of this part for a family of the same size.
 Section 435.725(c)(3) purportedly applies in Peura's case because it pertains to certain subgroups of "optional categorically needy," as that group is defined in 42 U.S.C. § 1396a(a)(10)(A)(ii) and 42 C.F.R. pt. 435, subpt. C. See 42 C.F.R. §§ 435.700, .725(b). Alaska has opted to provide coverage for some of the subgroups of "optional categorically needy," see Alaska Stat. § 47.07.020(b), including a subgroup in which Peura's membership is undisputed, see 42 U.S.C. § 1396a(a)(10)(A)(ii)(V); 42 C.F.R. § 435.231; Alaska Stat. § 47.07.020(b)(6). Section 435.725, the regulation providing for Peura's child support exclusion, applies to this subgroup of "optional categorically needy." See 42 C.F.R. § 435.725(b)(3).
 
 
 [3]
 Because the liability of the federal defendant under the third-party complaint is contingent on the potential liability of the state defendants to Peura, Peura's loss in the district court established law of the case sufficient to dispose of the third-party complaint. The district court's oversight in not explicitly disposing of the state's third-party claims against the Secretary therefore does not bar appellate jurisdiction. See Federal Ins. Co. v. Scarsella Bros., Inc., 931 F.2d 599, 601 (9th Cir.1991)
 
 
 [4]
 The class of plaintiffs in Emerson included both applicants and recipients of Minnesota Medicaid, 959 F.2d at 121, although in discussing "available" income the Eighth Circuit generally referred only to Medicaid eligibility criteria and not to criteria for determining "the extent of medical assistance under the [state's] plan," 42 U.S.C. § 1396a(a)(17), once an applicant is found eligible. The Emerson court apparently found no reason to distinguish between the two sets of criteria and, in view of the statute's silence regarding any distinction, we agree. The Secretary is also of this view: "Because section 1396a(a)(17) addresses in terms both 'eligibility for and the extent of' medical assistance, and concerns both 'applicant[s]' and 'recipient[s],' its restrictions apply to both eligibility determinations and post-eligibility determinations regarding the extent of assistance." Brief for Appellee Louis W. Sullivan 4. It is therefore of little import that the decision of the Secretary and Alaska to take into account a portion of Peura's child support obligation comes in the context of a post-eligibility determination
 
 
 [5]
 To paraphrase the Court in Schweiker:
 This case presents the question whether any [consideration of money destined for child support as available income] is consistent with the "availability" requirement of subsection (17)(B). We hold that it is. We do not, however, decide whether state plans [or federal regulations] that set aside inadequate sums for [either the institutionalized Medicaid applicant or recipient, or the child or children who the applicant or recipient must support,] are consistent with [either subsection (17)(B) or] other provisions of the statute, such as the requirement that States "reasonabl[y] evaluat[e] ... income or resources." 42 U.S.C. § 1396a(a)(17)(C).
 453 U.S. at 49 n. 21, 101 S.Ct. at 2643 n. 21.
 
 
 [6]
 Even if the court did take this factor into account, its judgment likely could not replace the judgment of Congress or the Secretary on the question of the amount of child support payments to be taken into account in determining Medicaid eligibility
 
 
 [7]
 We note that Peura has available to him the option of returning to state court to seek a reduction in his child support obligations. Defendants assert, and Peura does not dispute, that the minimum child support required of him under Alaska law falls below the ANI allowance. Indeed, at oral argument, Peura's counsel conceded that, "[i]n this case, ... we don't dispute the fact that if [Peura's] child support were refigured, if his guardian went back in[to state court] and asked that it be refigured, it would be less than the allowances that are involved here."
 
 
 [8]
 Because we affirm the district court's decision on the merits, we need not consider Peura's arguments that, to the extent the Eleventh Amendment applied to his claims, the district court should have remanded those claims to state court