### 71872. JOHNSON v. FLANAGAN.
(347 SE2d 643)

BEASLEY, Judge.

1. We must set the record straight regarding the identity of the appellee in this case. Walter W. Flanagan, Sr., a Medicaid recipient, initiated the petition below. He sought judicial review of a final administrative order of DHR affirming DMA's determination that Flanagan's entire social security check (except for a small amount authorized for personal needs per 42 CFR 435.725 (c) (1)) was to be contributed to the cost of his institutionalization in a nursing home, rather than allowing court-ordered alimony payments to be subtracted first for his ex-wife. This decision related to the amount then to be paid by Medicaid to the nursing home. Flanagan's smaller contribution would result in a larger share of the bill having to be paid by Medicaid.

Flanagan died after petitioning the superior court for review of the adverse administrative decisions. His ex-wife pursued the case because of course she was interested in receiving her alimony before her former husband's income was contributed to his own care. She moved to intervene personally, but her motion was never acted on. Instead, the superior court entered a final order somewhat ambiguously nam-

ing the "estate of Walter W. Flanagan, Sr." as the petitioner. However, no personal representative of Flanagan was made a party after his death. Nevertheless, the court reversed the administrative decision and instructed the DMA "to restore to the estate of Walter W. Flanagan, Sr. all alimony payments incorrectly considered as income." The intended result was that the ex-wife would receive a lump sum representing the alimony payments which she would have received if DMA had not required the entire social security check (less the CFR-authorized small personal allowance) to go to Flanagan's nursing home care.

Without explanation, the appeal by DMA is against Walter W. Flanagan, *Jr.*, who responded with briefs and appearance for argument.

Because the procedural difficulties were not raised for review and, once straightened out, would not affect the merits, we will proceed with the substance of the appeal rather than insist on the untanglement.

2. In 1968, the Flanagans were divorced and Mr. Flanagan was ordered to pay alimony in the amount of $250 monthly. In April 1983, at about age 72, he became a resident of a nursing home. His sole income was social security in the amount of $541.20. His ex-wife, who received the check as his representative payee under 20 CFR 404.2021, first deducted her alimony before making the social security available for Flanagan's institutionalization (including the $25 personal needs allowance for him). She applied this order of priority despite 20 CFR 404.2040, which set out the use to which benefit payments are to be put. Flanagan had applied for Medicaid on June 1, 1983, to help pay the nursing home costs, and since he was eligible, Medicaid paid a share until his death on March 18, 1985. The amount paid by Medicaid took into account the social security check as his income, without first deducting the alimony. That is what he, and then his ex-wife, challenged. The issue was whether under the law the social security income he received was to be applied first to his own necessary care or whether alimony payments could first be paid.

An evidentiary administrative hearing was held, and the officer upheld the DMA's calculation of Flanagan's income, which was then used as a base for DMA's ascertainment of Medicaid benefits. An administrative appeal brought the same results and led to the judicial review which reversed.

The facts not being in dispute, the sole primary question is the legal one: Did DMA properly refuse to exclude the amount for alimony, set in a pre-existing court order, in determining the amount of Flanagan's available income for his own medical care? A review of the applicable federal statutes and federal regulations persuades us that the DMA was correct.

Flanagan was entitled to Medicaid (MAO-Medical Assistance Only) because of his nursing home institutionalization, his level of income, and his meeting certain requirements of the supplemental security income (SSI) program. 42 USC 1396a (a) (10) (A) (ii) (V). This category authorizes MAO to individuals listed in 42 USC 1396d (a) who meet an income limit established for SSI by 42 USC 1396b (f) (4) (C). For MAO, Flanagan had to meet SSI requirements with certain exceptions, even though he did not receive SSI; it was simply the measurement tool for MAO. Income with respect to the limit must be computed "as determined under § 1382a . . . but without regard to subsection (b) thereof." 42 USC 1382a generally lists what sums must be counted as income for SSI eligibility and specifically includes at paragraph (a) (2) (B) social security benefits. Subsection 1382a (b) contains permissible exclusions from SSI income. Thus, in defining income limits for Flanagan's Medicaid eligibility category, the statute specifically requires the inclusion of all that would qualify as income for SSI purposes without the SSI-allowed income exclusions. 42 CFR § 435.722 (b).

Alimony required to be paid by a recipient of Medicaid is nowhere excluded. A thorough study of 42 USC 1396 and 1396a demonstrates that Medicaid is targeted to the "individual" and will provide medical assistance to the extent that a person's available income cannot meet the need. That need comes first, in considering the use of social security income. Then the need of dependents follows, and then creditors. 20 CFR 404.2040. The social security benefits are Flanagan's unearned income. 20 CFR 416.1121 (a). Unearned income is counted "at the earliest of the following points: when you receive it or when it is credited to your account or set aside for your use." 20 CFR 416.1123 (a). Even garnished amounts are included; subsection (b) (2) specifically provides: "We also include more than you actually receive if amounts are withheld from unearned income because of a garnishment or to make certain payments such as payment of your Medicare premium." Unearned income which is *not* counted does not include alimony payments made by the Medicaid beneficiary. 20 CFR 416.1124.

42 CFR 435.725 provides for the application of the institutionalized individual's income, after he is deemed eligible for Medicaid, to the cost of care. The amounts that may be deducted from the individual's income before the determination of MAO benefits does not include alimony payments. The only item deductible besides those disregarded in determining eligibility in the first place, in Flanagan's circumstances, is the $25 monthly personal needs allowance. 42 CFR 435.725 (c) (1) (i).

Thus there is no authority for DMA to allow the ex-wife to be paid alimony before determining the amount of Flanagan's available

income for his needs, so that it could establish Medicaid's share of his nursing home costs.

3. The superior court also ruled, at Flanagan's urging, that the agency decision is an unconstitutional denial of equal protection of the laws and a violation of the doctrine of separation of powers. Appellant DMA cites these as error. We find no violation, but rather a compliance with the program instituted by Congress and participated in by the state and applied for by Flanagan. It is not a matter of equal protection but rather a matter of allocating Flanagan's individual income to his medical needs first, in priority over his ex-wife's alimony.

Nor, as appellee urges, is there any confrontation between judicial, executive, and legislative mandates. The small amount of funds available was simply not sufficient to meet Flanagan's medical needs and make the alimony payments as well. The federal government's Medicaid program extended to the needs of the individual but not to the individual's ex-spouse, and she could not receive indirectly (by first removing her alimony from her ex-husband's small income, and thus requiring a greater amount of Medicaid) what was not authorized directly.

*Judgment reversed. Deen, P. J., concurs and also concurs specially. Benham, J., concurs specially.*

BENHAM, Judge, concurring specially.

It is with reluctance that I concur with the decision in this case. Although I am compelled to accept the reasoning and the interpretation of federal law on which the decision is based, I am also moved to express my dismay at the heartlessness inherent in the regulations which govern the issue in this case. The bottom line of the regulatory scheme is that those unfortunate enough to be of limited financial means and of such ill health that they must be institutionalized are required to forbear meeting their legal and moral obligations in order that the state's contribution to their support and maintenance will be reduced. It is apparent that no genuine consideration is given to the burden imposed on those dependent upon the fulfillment of the legal and moral obligations of those in Mr. Flanagan's situation, or to the likelihood that those who are bereft of the support owed them by persons in Mr. Flanagan's circumstances will themselves become wards of the state, further burdening the public purse and adding to the expense of administering programs of social welfare, or to the loss of simple human dignity of those as unfortunate as Mr. Flanagan, who are forced to abandon their legal and moral obligations.

While I recognize that the problems here are not within the power of this court to correct, and while I cannot fault the legal reasoning employed by this court today, I am saddened by the necessity

of joining it.

I am authorized to state that Presiding Judge Deen joins in this special concurrence.

DECIDED JUNE 24, 1986 —
REHEARING DENIED JULY 9, 1986 —

*Michael J. Bowers, Attorney General, H. Perry Michael, First Assistant Attorney General, Carol A. Cosgrove, William Joy, Senior Assistant Attorneys General, Vivian D. Egan, David C. Will, Assistant Attorneys General,* for appellant.

*Mary S. Peterson, Samuel F. Furgiuele, Jr.,* for appellee.