638 A.2d 833

ESTATE OF G.E., APPELLANT, v. DIVISION OF
MEDICAL ASSISTANCE AND HEALTH
SERVICES, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 26, 1993—Decided March 2, 1994.

Before Judges MICHELS, SKILLMAN and WEFING.

*Margarie M. Herlihy* argued the cause for appellant.

*John K. Worthington,* Deputy Attorney General, argued the cause for respondent (*Fred DeVesa,* Acting Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Lisa Marin Main,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

G.E. and V.E. were married in 1942. G.E. was diagnosed with Alzheimer's disease in 1990 and had to be admitted into a nursing home in November 1991. At that time G.E. was receiving a pension of $1,012.67 per month and social security benefits of $895 per month. In addition, V.E. was receiving social security benefits of $364 per month. Since the nursing home charges exceeded $4,100 per month, G.E.'s and V.E.'s combined monthly income of $2,271.67 was insufficient to meet the costs of G.E.'s institutional care. As a result, V.E. began to experience difficulty meeting her own financial needs.

V.E. filed an action in the Family Part of the Chancery Division seeking spousal support. This suit resulted in the entry of an

order on January 23, 1992, awarding' V.E. monthly support of $1,075 to be paid directly by the administrators of G.E.'s pension fund. The order also directed V.E. to make prompt application for Medicaid and/or other welfare and social service benefits on G.E.'s behalf. The court subsequently entered a Qualified Domestic Relations Order (QDRO) to effectuate the direct pension payments to V.E. Although G.E.'s pension administrator continued to draw checks in the name of G.E., V.E. cashed the checks and applied the proceeds to her own living expenses.

On January 17, 1992, V.E. submitted an application for Medicaid benefits on behalf of her husband. On January 23, 1992, the Ocean County Board of Social Services (the Board) denied the application on the ground that G.E.'s monthly income exceeded the then applicable Medicaid income threshold. In reaching its decision, the Board included the full amount of G.E.'s pension payments as countable income, refusing to treat the court-ordered transfer of these funds to V.E. as rendering them "unavailable" to G.E.

On V.E.'s appeal to the Division of Medical Assistance and Health Services (the Division) on behalf of her husband, an Administrative Law Judge ruled that it was improper for the Board to include the pension funds payable to V.E. as income to G.E. for the purpose of determining his Medicaid eligibility. However, the Director reversed this decision, stating that to disregard G.E.'s pension benefits would "constructively eliminate the income standard ... for a class of Medicaid applicants. Court-ordered spousal support would become a vehicle to circumvent Medicaid laws and regulations."

G.E. died on July 1, 1992. At the time of G.E.'s death, V.E. was obligated under G.E.'s admission agreement with the nursing home to pay the $31,444.49 which G.E. owed to the nursing home. V.E. appeals the Director's final decision on behalf of her husband's estate.

Enacted as Title XIX of the Social Security Act, 42 *U.S.C.A.* § 1396 *et seq.*, Medicaid was established to provide health care to

persons who cannot otherwise afford it. *Atkins v. Rivera*, 477 *U.S.* 154, 156–57, 106 *S.Ct.* 2456, 2458, 91 *L.Ed.*2d 131, 137 (1986). If a state chooses to participate in the Medicaid program, it must adopt a state plan which complies with the federal Medicaid Act and the regulations adopted by the Secretary of the Department of Health and Human. Services (HHS). 42 *U.S.C.A.* §§ 1396a, 1396a(a); *Schweiker v. Gray Panthers*, 453 *U.S.* 34, 36–37, 101 *S.Ct.* 2633, 2636, 69 *L.Ed.*2d 460, 465 (1981).

New Jersey has elected to participate in the Medicaid program through the enactment of the Medical Assistance and Health Services Act. *N.J.S.A.* 30:4D–1 to –42. As a result, New Jersey is obligated to provide medical assistance to the "categorically needy." 42 *U.S.C.A.* § 1396a(a)(10)(A)(i). In addition, New Jersey elected in 1985 to provide assistance to the "medically needy," *L.* 1985, *c.* 371, § 1; *N.J.S.A.* 30:4D–3i(8), an optional class of beneficiaries under federal Medicaid law. 42 *U.S.C.A.* § 1396a(a)(10)(A)(ii). The "medically needy" are applicants who otherwise satisfy the eligibility requirements for Aid to Families with Dependent Children (AFDC) or Supplemental Security Income (SSI) benefits, but whose income levels make them ineligible for relief under these programs. *Atkins v. Rivera, supra*, 477 *U.S.* at 157, 106 *S.Ct.* at 2458; 91 *L.Ed.*2d at 137.

Since G.E. was 74 years old at the time of his application, he was entitled to be considered for "medically needy" benefits. *N.J.S.A.* 30:4D–3i(8)(a)(iii). However, to qualify for these benefits, he was required to meet a statutory income requirement, *N.J.S.A.* 30:4D–3i(8)(b)(i), which on the date of his application was a monthly income of less than $1,211.00. 24 *N.J.R.* 651, 652 (Feb. 18, 1992).

Appellant does not contest the Division's characterization of G.E.'s pension payments as "income" for Medicaid eligibility purposes. See *N.J.A.C.* 10:71–5.4(a)(3). Appellant also does not dispute that G.E.'s pension of $1,012.67 per month and social security benefits of $895 per month far exceeded the income eligibility limit of $1,211 per month. However, appellant contends

that G.E.'s pension income was not "available" to him after entry of the QDRO requiring that it be paid directly to V.E.

In enacting 42 *U.S.C.A.* § 1396a(a)(17)(B), Congress did not define the term "available income." Instead, Congress delegated the primary responsibility for defining "available income" to the Secretary of HHS:

> A State plan for medical assistance must ... for determining eligibility for . . medical assistance under the [Medicaid] plan ... provide for taking into account only such income ... as [is], *as determined in accordance with standards prescribed by the Secretary,* available to the applicant or recipient. ...
>
> [42 *U.S.C.A.* § 1396a(a)(17)(B) (emphasis added).]

However, Congress amended the Medicaid Act in 1988 to authorize states to adopt less restrictive income qualifications than those adopted by the Secretary of HHS:

> The methodology to be employed in determining income ... eligibility for [medically needy] individuals ... *may be less restrictive,* ... than the methodology[,] ... in the case of groups consisting of aged, blind, or disabled individuals, under the supplemental security income program....
>
> [42 *U.S.C.A.* § 1396a(r)(2)(A)(i) (emphasis added).]

Therefore, G.E. was eligible for Medicaid benefits only if the payments to V.E. under the support order were not "available income" to him under either (1) regulations adopted by the Secretary of HHS pursuant to 42 *U.S.C.A.* § 1396a(a)(17)(B), or (2) regulations adopted by the Director of the New Jersey Division of Medical Assistance and Health Services pursuant to 42 *U.S.C.A.* § 1396a(r)(2)(A)(i).

I

The Secretary of HHS exercised her authority under 42 *U.S.C.A.* § 1396a(a)(17)(B) by adopting a regulation which requires the inclusion of funds that an applicant must use to satisfy support obligations as "available income" for the purpose of determining SSI, and hence also Medicaid eligibility, even though those funds cannot be used to offset the applicant's living expenses:

> We may include more or less of your unearned income than you actually receive.
> . . . .

> We ... include more than you actually receive if amounts are withheld from unearned income because of a garnishment, or to pay a debt or other legal obligation. ...
>
> [20 *C.F.R.* § 416.1123(b)(2).] [1]

In response to a public comment received prior to the adoption of this regulation, the Secretary of HHS clearly indicated that HHS's definition of "available income" was intended to reach applicants such as G.E.:

*Comment*

One commentator indicated that the regulations, as proposed, will impose a severe hardship on elderly couples where one of the individuals (for example, the husband) is in a nursing home. In States where Medicaid eligibility is determined on the basis of SSI financial eligibility, counting the husband's support obligations as income to him could preclude his Medicaid eligibility and result in his eviction from the nursing home. The applicant for Medicaid is faced with a choice of either not paying the court-ordered payment and risking being held in contempt of court, or making the payment and still not being eligible for Medicaid.

*Response*

[I]t has been longstanding SSI policy that amounts withheld from earned and unearned income for payment of a debt or other legal obligation are included in income for purposes of determining eligibility ... under the SSI program....

... [W]hen one member of a couple (e.g., the husband) is in a nursing home, not counting the husband's support obligations as income to him could result in manipulation of those obligations to offset income and, thus, increase Federal/State assistance. In effect, the husband's support obligations would be paid off at the expense of the [SSI or Medicaid] program[s]. This is not the intent of a means-tested program.

... States could elect in determining Medicaid eligibility to disregard garnished income or income which has been designated by court order for specific use. This income disregard is available to the extent that it will not result in the State exceeding the income limitations specified in section 1903(f) of the Act. Section 1902(r)(2)(A) of the Act (subject to specific Federal Financial Participation (FFP) limits) affords States the option to use more liberal income and resource eligibility

---

[1] The definition of "available income" in 20 *C.F.R.* 416.1123(b)(2), which was adopted in 1991, 56 *Fed.Reg.* 3209, 3212 (Jan. 29, 1991), retains substantially the same language as its predecessors. *See, e.g.,* 47 *Fed.Reg.* 13792, 13794 (Apr. 1, 1982). In fact, HHS has considered income which is subject to garnishment as "available" to an applicant for purposes of determining SSI eligibility since at least 1976. *Cervantez v. Sullivan,* 963 *F.*2d 229, 232 n. 6 (9th Cir.1992). However, prior to 1991 HHS had not consistently treated such income as "available" for the purpose of determining Medicaid eligibility. See *Himes v. Shalala,* 999 *F.*2d 684, 690–91 (2d Cir.1993).

methodologics for determining Medicaid eligibility for individuals who are not receiving cash assistance than those which are employed by the cash assistance programs.

[56 *Fed.Reg.* 3209, 3210–11 (Jan. 29, 1991).]

Thus, under 20 *C.F.R.* 416.1123(b)(2), any income which is withheld from an applicant to satisfy a judgment must be treated as "available income" in determining his eligibility for SSI and hence Medicaid, unless the state has adopted a less restrictive standard of eligibility.

The Supreme Court has indicated that the Secretary of HHS's definition of "available income" under 42 *U.S.C.A.* § 1396a(a)(17)(B) is entitled to "legislative effect." As the Court explained in *Schweiker v. Gray Panthers, supra,* 453 *U.S.* at 44, 101 *S.Ct.* at 2640, 69 *L.Ed.*2d at 470:

In view of this explicit delegation of substantive authority, the Secretary's definition of the term "available" is "entitled to more than mere deference or weight." Rather, the Secretary's definition is entitled to "legislative effect" because, "[i]n a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term."

[Quoting *Batterton v. Francis,* 432 *U.S.* 416, 425–26, 97 *S.Ct.* 2399, 2405–06, 53 *L.Ed.*2d 448, 456–57 (1977).]

The Court also recognized that "available income" is "different from [that] *in hand." Id.* 453 *U.S.* at 48, 101 *S.Ct.* at 2642, 69 *L.Ed.*2d at 472; *see also Heckler v. Turner,* 470 *U.S.* 184, 200–04, 105 *S.Ct.* 1138, 1147–49, 84 *L.Ed.*2d 138, 149–52 (1985). Accordingly, the Court sustained regulations adopted by the Secretary of HHS which authorized a state to "deem" a spouse's income as being available to the other spouse under certain circumstances. *Schweiker v. Gray Panthers, supra,* 453 *U.S.* at 48–50, 101 *S.Ct.* at 2642–43, 69 *L.Ed.*2d at 472–74.

Recognizing the Secretary of HHS's expansive authority under 42 *U.S.C.A.* § 1396a(a)(17)(B), several federal circuit courts of appeals have sustained the Secretary's position, now formalized in 20 *C.F.R.* 416.1123(b)(2), that amounts paid to satisfy support orders constitute "available income" for Medicaid eligibility purposes. *Himes v. Shalala,* 999 *F.*2d 684, 688–91 (2nd Cir.1993); *Peura ex rel. Herman v. Mala,* 977 *F.*2d 484 (9th Cir.1992);

*Emerson v. Steffen,* 959 *F.*2d 119 (8th Cir.1992); *see also Cervantez v. Sullivan,* 963 *F.*2d 229 (9th Cir.1992); *Healea v. Bowen,* 871 *F.*2d 48 (7th Cir.1989); *Szlosek v. Secretary of Health & Human Servs.,* 861 *F.*2d 13 (1st Cir.1988); *Lyon v. Bowen,* 802 *F.*2d 794 (5th Cir.1986). A number of state courts have reached the same conclusion. *See, e.g., Clark v. Commissioner of Income Maintenance,* 209 *Conn.* 390, 551 *A.*2d 729, 736–37 (1988); *Crider v. State, Dep't of Health & Rehabilitative Servs.,* 555 *So.*2d 408, 411–13 (Fla.Dist.Ct.App.1989); *Johnson v. Flanagan,* 179 *Ga.App.* 708, 347 *S.E.*2d 643, 645–46 (1986).

The federal decisions have concluded that the history of the federal Medicaid Act, including recent amendments, is supportive of the Secretary's expansive view of "available income." *Himes v. Sullivan,* 779 *F.Supp.* 258, 263–68 (W.D.N.Y.1991), *aff'd,* 956 *F.*2d 1159 (2nd Cir.1992); *Peura ex rel. Herman v. Mala, supra,* 977 *F.*2d at 488–91; *Emerson v. Steffen, supra,* 959 *F.*2d at 122–23. The district court in *Himes* and the court of appeals in *Emerson* both relied upon the following passage in the House Report proposing the omnibus legislation which included the 1988 amendments to the Medicaid Act:

A State could treat income used to make family support payments (pursuant to a court order [or] agreement with a District Attorney) as unavailable to the payor for purposes of determining income eligibility. [*H.R.Rep. No. 391(I),* 100th Cong., 1st Sess. 505 (1987), *reprinted in* 1987 *U.S.Code Cong. and Admin.News,* 2313–1, 2313–325.]

The district court concluded in *Himes* that "[t]his language indicates that participating states have the *option* of implementing this less restrictive methodology, but certainly are not *required* to do so," 779 *F.Supp.* at 264, and the court of appeals said in *Emerson* that "[t]his Report indicates Congress's intent only to permit, rather than command, states to exclude such payments from available income." 959 *F.*2d at 123.

We conclude substantially for the reasons expressed in *Himes, Peura* and *Emerson* that the Secretary of HHS's definition of "available income" constitutes a valid exercise of her regulatory authority under 42 *U.S.C.A.* § 1396a(a)(17)(B). Thus,

G.E.'s pension was "available income" to him within the intent of 20 *C.F.R.* § 416.1123(b)(2) even though V.E. was entitled to receive that money pursuant to a spousal support order.

## II

The remaining question is whether New Jersey has exercised its authority under 42 *U.S.C.A.* § 1396a(r)(2)(A)(i) to adopt less restrictive income eligibility standards for Medicaid applicants by excluding payments under a spousal support order from an applicant's countable income. *N.J.A.C.* 10:71–5.3 lists various categories of income which must be disregarded in determining Medicaid eligibility, including certain insurance reimbursements, medical payments by a third party, the value of social services, the value of food stamps, loans, tax refunds, certain school tuition and fees, infrequent or irregular income, foster care payments and one-third of monies received as child support. Although this list omits any reference to amounts paid to satisfy court-ordered spousal support obligations, appellant argues that New Jersey has excluded such payments from the income which may be considered in determining Medicaid eligibility through its definition of "available income" set forth in *N.J.A.C.* 10:71–5.1(b)(1)(i). This regulation states:

> For the purpose of this program, income shall be defined as receipt, by the individual, of any property or service which he/she can apply, either directly or by sale or conversion, to meet his/her basic needs for food, shelter, or clothing. All income, whether in cash or in-kind, shall be considered in the determination of eligibility, unless such income is specifically exempt under the provisions of N.J.A.C. 10:71–5.3
>
> 1. Availability of income: In order to be considered in the determination of eligibility, income must be "available." Income shall be considered available to an individual when:
>
> i. With the exception of income from self-employment, the individual actually receives the income;

However, this regulation, originally codified at *N.J.A.C.* 10:94–4.28(a)(1), was adopted in 1976, 8 *N.J.R.* 287 (June 10, 1976), more than eleven years before the 1988 enactment of 42 *U.S.C.A.* § 1396a(r)(2)(A)(i), which authorized the states to establish less

restrictive Medicaid eligibility standards than those adopted by the Secretary of HHS. Prior to readopting this regulation in 1983, 15 *N.J.R.* 1477 (Sept. 6, 1983), the Director indicated that the regulation "establishe[s] a uniform system ·of determining eligibility for all applicants under the same criteria established by the Federal government for eligibility determinations in the Supplemental Security Income Program." 15 *N.J.R.* 999, 1000 (June 20, 1983). Thus, the Director's apparent intent was to establish a definition of "available income" coextensive with that employed by HHS. When the Director proposed this regulation for a further readoption in 1990, he stated that "except where Federally required or where federal statute authorizes exceptions to the SSI policy, th[is] rule[ ] follow[s] the SSI eligibility process." 22 *N.J.R.* 3357 (Nov. 5, 1990). Although this statement could be read to suggest that New Jersey has adopted broader eligibility standards than are mandated by the federal Medicaid Act and its implementing regulations, we do not believe that the oblique "actually receives" language of *N.J.A.C.* 10:71–5.1(b)(1)(i) can be reasonably construed as an affirmative expression of an intent to adopt more liberal state Medicaid eligibility standards, especially in the face of the Director's own denial of such an intent. *Cf. DiMaria v. Board of Trustees of Pub. Employees' Retirement Sys.,* 225 *N.J.Super.* 341, 351, 542 *A.*2d 498 (App.Div.) ("An agency's interpretation of its own regulations is entitled to substantial deference."), *certif. denied,* 113 *N.J.* 638, 552 *A.*2d 164 (1988). This conclusion is also consistent with the recent decision of another panel of this court in *M.R. v. State, Dep't. of Human Servs., Div. of Medical Assistance & Health Servs.,* 268 *N.J.Super.* 586, 588–90, 634 *A.*2d 143 (App.Div.1993), which accorded similar deference to the Director's interpretation of another subsection of *N.J.A.C.* 10:71–5.1(b).

Moreover, the authority which 42 *U.S.C.A.* § 1396a(r)(2)(A)(i) confers upon the states to adopt less restrictive Medicaid eligibility standards is subject to significant limitations. A state may not set an income limit on Medicaid eligibility for a nursing home resident which exceeds 300% of the SSI benefit for an individual.

42 *U.S.C.A.* § 1396a(a)(10)(A)(ii)(V); 42 *U.S.C.A.* § 1396b(f)(4)(C); 42 *C.F.R.* § 435.23; 42 *C.F.R.* § 435.1005. If a state were to adopt regulations which allowed individuals with income in excess of this amount to become eligible for Medicaid, HHS could deny federal financial participation for the benefits paid to those recipients. 42 *U.S.C.A.* § 1396c; *see Georgia, Dep't of Medical Assistance ex rel. Toal v. Shalala,* 8 *F.*3d 1565, 1573 (11th Cir.1993); *cf. Wilder v. Virginia Hosp. Ass'n,* 496 *U.S.* 498, 512, 110 *S.Ct.* 2510, 2519, 110 *L.Ed.*2d 455, 469 (1990). However, the Division is required by its enabling legislation to adopt regulations which maximize federal financial participation in the New Jersey Medicaid program. *N.J.S.A.* 30:4D–7. Consequently, if the Director's intent in adopting *N.J.A.C.* 10:71–5.1(b)(1)(i) had been to provide more expansive eligibility standards for Medicaid than mandated by federal law, it must be presumed that those standards would have been subject to the income limitations required to maintain federal financial participation. Yet appellant's interpretation of *N.J.A.C.* 10:71–5.1(b)(1)(i), as excluding all money paid to a spouse under a QDRO, would not be subject to any limits and thus would result in the loss of federal financial participation for any recipient whose total income, including the amount paid to a spouse, exceeded 300% of the SSI benefit level.

In addition, if appellant's interpretation of *N.J.A.C.* 10:71–5.1(b)(1)(i) were correct, the exclusion from income would not be limited to monies paid to a spouse under a support order but also would apply to any other income paid directly to a creditor under a garnishment or other form of legal attachment. This would encourage prospective Medicaid applicants with incomes exceeding the eligibility limit to incur substantial debts in order to establish eligibility, thereby circumventing the income limits established under the program.

Appellant relies upon the Director's decision in a 1991 case, *J.G. v. Division of Medical Assistance & Health Servs.,* 91 *N.J.A.R.*2d 7, 1991 WL 441730 (Div. of Med.Asst. & Health Servs.), which permitted a Medicaid applicant to exclude income paid to his

spouse under a QDRO in establishing eligibility. However, this decision was not based on an interpretation of *N.J.A.C.* 10:71–5.1(b)(1)(i) or any other state regulation, but rather on the Director's view of the requirements of the federal Medicaid act, as derived from federal cases such as *Emerson v. Wynia*, 754 *F.Supp.* 705 (D.Minn.1991), *Whaley v. Schweiker*, 663 *F.*2d 871 (9th Cir.1981) and *Tsosie v. Califano*, 651 *F.*2d 719 (10th Cir.1981). *See J.G. v. Division of Medical Assistance & Health Servs., supra*, 91 *N.J.A.R.*2d at 9. Consequently, *J.G.* does not provide any guidance regarding the proper interpretation of New Jersey's own Medicaid regulations. Moreover, the recent federal cases sustaining the Secretary's current view of "available income," as set forth in 20 *C.F.R.* § 416.1123(b)(2), have substantially undercut the precedential authority of the line of federal cases upon which the Director relied in *J.G. See. e.g., Emerson v. Steffen, supra*, 959 *F.*2d at 122–24, *rev'g Emerson v. Wynia, supra; Cervantez v. Sullivan, supra*, 963 *F.*2d at 232–34 (limiting *Whaley v. Schweiker, supra* ). Consequently, the Director's change in position on the question of whether money paid to an applicant's spouse under a support order is "available income" for purposes of determining Medicaid eligibility simply reflects a similar change in position on the part of the Secretary of HHS, which has been upheld by the federal courts. *See Himes v. Shalala, supra*, 999 *F.*2d at 690 ("an inconsistent position alone is not enough to require this Court to give less deference to the Secretary's definition of available income.").

Therefore, we conclude that the Director's denial of G.E.'s Medicaid application was consistent with federal law and based upon a reasonable construction of New Jersey's Medicaid regulations.

Affirmed.