[Cite as *Bingham v. Wilmington Bd. of Zoning Appeals*, 2013-Ohio-61.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| GORDON BINGHAM, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2012-05-012 |
| | : | O P I N I O N |
| - vs - | | 1/14/2013 |
| | : | |
| CITY OF WILMINGTON BOARD OF ZONING APPEALS, et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CVF2011-0645

Andrew P. George, 1160 East Main, P.O. Box 36, Lebanon, Ohio 45036, for plaintiff-appellant

Brian A. Shidaker, 69 North South Street, Wilmington, Ohio 45177, for defendants-appellees

**HENDRICKSON, P.J.**

{¶ 1} Plaintiff-appellant, Gordon Bingham, appeals the judgment of the Clinton County Common Pleas Court upholding a decision of the City of Wilmington Board of Zoning Appeals ("BZA") requiring appellant to cease and desist junk yard operations on his property.

{¶ 2} In 2002, appellant purchased a parcel of real estate zoned industrial (I1) in Wilmington, Clinton County, Ohio (the "Property"). The Property was previously used as a

lawn and garden business, but was converted by appellant to an automobile repair shop and towing business. Appellant's towing business expanded over time, with appellant acquiring many automobiles when owners would not pay impound or towing fees. Therefore, in 2005, appellant began operating a salvage yard on the Property. Currently, appellant maintains between 300 to 400 automobiles on the Property in various states of disassembly. Roughly 50 percent of appellant's income is derived from this junk yard business.[1]

{¶ 3} When appellant purchased the Property, a junk yard was not a prohibited use under the City of Wilmington's Planning and Zoning Code (the "1959 Zoning Regulations"), but the code did require a landowner to obtain a conditional use permit before operating a junk yard within city limits.[2] In September 2008, a new zoning ordinance was passed prohibiting junk yards from operating within the city of Wilmington (the "2008 Zoning Regulations"). On July 25, 2011, Ernie Blankenship, code enforcement official for the Wilmington Building and Zoning Department ("Blankenship"), sent appellant a notice that appellant's use of his Property as a junk yard was in violation of the 2008 Zoning Regulations and that appellant must discontinue such use. The notice further stated that appellant had failed to obtain a "Certificate of Occupancy" from the city of Wilmington and that the obtainment of such certificate may have allowed appellant to continue using the Property as a junk yard as a nonconforming use.

{¶ 4} Appellant appealed Blankenship's notice to the Wilmington BZA and, on September 12, 2011, a public hearing was held. The BZA orally voted to deny appellant's appeal and, consequently, appellant appealed to the Clinton County Common Pleas Court. On March 21, 2012, a magistrate's decision was issued finding the actions of Blankenship

---

1. Although appellant identifies his business as a "salvage yard," the applicable zoning regulations use the term "junk yard." To avoid confusion, we shall refer to appellant's "salvage yard" as a "junk yard" for the purposes of this case.

2. The relevant provisions of the 1959 Zoning Regulations had not been altered until the 2008 revision.

and the BZA to be illegal and unconstitutional. The BZA filed objections to the magistrate's decision and, following a hearing, the common pleas court overturned the magistrate's decision and found that appellant's use of the Property did not qualify as a prior, nonconforming use. From the common pleas court's decision, appellant appeals, raising a single assignment of error:

{¶ 5} THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT'S APPEAL AND HOLDING [THAT] APPELLANT'S MOTOR VEHICLE JUNK YARD USE IS NOT A NONCONFORMING USE.

{¶ 6} "R.C. Chapter 2506 governs the standards applied to appeals of administrative agency decisions." *Hutchinson v. Wayne Twp. Bd. of Zoning Appeals*, 12th Dist. No. CA2012-02-032, 2012-Ohio-4103, ¶ 14, citing *Key-Ads, Inc. v. Bd. of Cty. Commrs.,* 12th Dist. No. CA2007-06-085, 2008-Ohio-1474, ¶ 7. In such cases, "the standard of review 'imposed upon a common pleas court varies distinctly from the standard of review imposed upon an appellate court.'" *Id.* "A common pleas court reviewing an administrative appeal pursuant to R.C. 2506.04 weighs the evidence in the whole record and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of the substantial, reliable, and probative evidence." *Id.*, citing *Key-Ads* at ¶ 7; *Shields v. Englewood,* 172 Ohio App.3d 620, 2007-Ohio-3165, ¶ 28 (2nd Dist.).

{¶ 7} However, an appellate court's review of an administrative appeal is more limited in scope. *Hutchinson* at ¶ 15, citing *Shamrock Materials, Inc. v. Butler Cty. Bd. of Zoning,* 12th Dist. No. CA2007-07-172, 2008-Ohio-2906, ¶ 10. Unlike the common pleas court, the appellate court "does not weigh the evidence or determine questions of fact." *Id.* Rather, "the appellate court must affirm the common pleas court's decision unless it finds, as a matter of law, that the decision is not supported by a preponderance of reliable, probative,

and substantial evidence." *Id.*, citing *Shamrock* at ¶ 10; *Mills v. Union Twp. Bd. of Zoning Appeals,* 12th Dist. No. CA2005-02-013, 2005-Ohio-6273, ¶ 6.

{¶ 8} Prior to turning to the merits of the case, we must first address a contention by appellant that the terms "certificate of occupancy," "permit," "zoning permit," and "conditional use permit," as used in this case, all mean the same thing. Specifically, appellant contends that each of these terms simply means "a certificate issued by the City [of Wilmington] permitting a business to operate." We do not find this to be the case.

{¶ 9} A "certificate of occupancy" is a certificate issued by the building inspector without which land is not permitted to be occupied or used for any purpose. 2008 Zoning Regulations 1135.02. A "conditional use permit," on the other hand, is a permit which may be issued when a specific land use is allowed only after certain requirements are met. 2008 Zoning Regulations 1163.01; 1163.02.

{¶ 10} Though these terms are clearly different in their meanings, appellant is not wrong in his assertion that the parties, as well as Blankenship, were under the impression that a "certificate of occupancy" had the same definition as a "conditional use permit." During the hearing before the common pleas court, Wilmington's counsel referred to a "certificate of occupancy" and a "conditional use permit" as "permits" which are "the same thing." Further, Blankenship's July 25, 2011 notice letter to appellant stated appellant had not obtained a "Certificate of Occupancy for [his] business" which "may have allowed [him] to have a non-conforming use." Based upon our review of the record, we find that, though using different terms, the parties, courts, and BZA were continuously applying the definition of a conditional use permit. Therefore, we shall review the merits of this case with this definition in mind.

{¶ 11} The sole issue presented for our review is whether appellant's operation of a junk yard on the Property is a nonconforming use. In addressing this issue, we note that the parties do not dispute that (1) appellant was operating a junk yard on the Property prior to the

2008 revision of the Zoning Regulations; (2) the use of the Property as a junk yard was a conditional use prior to the 2008 revision; (3) to qualify the Property for a conditional use, appellant was required to file an application for a conditional use permit and seek a finding by the BZA that the conditional use was appropriate; and (4) appellant never obtained a conditional use permit.

{¶ 12} Pursuant to the statute addressing nonconforming uses, "[t]he lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or amendment thereto, may be continued, although such use does not conform wkith the provisions of such ordinance." R.C. 713.15. Thus, in order to determine whether appellant's operation of the junk yard was a nonconforming use permissible after the 2008 Zoning Regulations Revision, we must find that the junk yard was a lawful use at the time the use was established in 2005. *See Akron v. Chapman*, 160 Ohio St. 382, paragraph two of the syllabus (1953); *Pschesang v. Village of Terrace Park*, 5 Ohio St.3d 47, 48 (1983).

{¶ 13} In reviewing the issue before us, we find the Ohio Supreme Court's decision in *Pschesang v. Village of Terrace Park* to be analogous. In *Pschesang*, a dentist began operating a dentist's office within a residential district, a use prohibited by the pertinent zoning regulations unless the office was also used as a residence. *Id.* at the syllabus. The pertinent zoning regulations were later revised, permitting the enlargement of nonconforming uses within the residential district. *Id.* The dentist applied for a permit to expand his dental office, but the permit was denied on the ground that the dentist's use of the premises was prohibited by the zoning regulations. *Id.* In reviewing the local zoning ordinances, R.C. 713.15, and the common law, the Ohio Supreme Court stated that the use of the property as solely a dentist's office was not lawful when it was established and cannot constitute a nonconforming use after the revision of the zoning regulations. *Id.* at 49. The court went on

- 5 -

to hold that "a use of property must be lawful at the time the use was established in order to qualify as a nonconforming use. Therefore, a use not permitted by the applicable zoning ordinance when the use was established does not constitute a nonconforming use." *Id.* at 49-50.

{¶ 14} In the case before us, appellant was required to obtain a conditional use permit in 2005 when he chose to open a junk yard on the Property. Appellant admits that he failed to do so. Thus, when zoning regulations were revised in 2008, appellant's junk yard was not a nonconforming use, as the Property's use as a junk yard was not lawful at the time its use as such was established.

{¶ 15} Appellant directs our attention to this court's decision in *Board of Trustees of Williamsburg Twp v. Kriemer*, 72 Ohio App.3d 608 (12th Dist.1991), for the proposition that we should look to the actual *use* being performed rather than whether the appropriate permits were secured in determining whether a use is lawful. In *Kreimer*, a parcel of property was used as a junk yard for some time prior to the enactment of a zoning resolution. *Id.* at 610. "Once the zoning resolution was adopted, the property became a nonconforming use, but was permitted to continue as a junk yard because it had lawfully existed at the time the regulation went into effect." *Id.* However, in 1987, the property was sold from the original junk yard operator to a new owner, and the junk yard was not operated for two years. *Id.* The township sought a permanent injunction to prevent the new owner from operating a junk yard, arguing that the owner had voluntarily discontinued the nonconforming use and was, therefore, no longer entitled to nonconforming use status. *Id.* In support of its contention, the township pointed out that the original landowner had failed to maintain a junk yard license for the property. *Id.* at 612. Citing *Pschesang,* this court determined that the use of the property as a junk yard was lawfully in existence prior to the enactment of the zoning resolution and, therefore, maintained its nonconforming use status. *Id.*

{¶ 16} We find *Kreimer* distinguishable from the case at hand, as the nonconforming use in *Kreimer* was lawful at the time the zoning resolution at issue was enacted. Here, because appellant failed to obtain a conditional use permit in 2005, his use of the Property as a junk yard was not lawful at the time of the 2008 revision to the Zoning Regulations. As such, appellant's use of the Property could not be considered a nonconforming use.

{¶ 17} Based upon the foregoing, we cannot say that the decision of the common pleas court was not supported by a preponderance of reliable, probative, and substantial evidence. Consequently, appellant's sole assignment of error is overruled.

{¶ 18} Judgment affirmed.


PIPER and BRESSLER, JJ., concur.


Bressler, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.