[Cite as *Merritt v. Ohio Dept. of Job & Family Servs.*, 2021-Ohio-4540.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| JEROME MERRITT, | : | |
| Appellant, | : | CASE NO. CA2021-04-044 |
| | : | O P I N I O N |
| - vs - | | 12/27/2021 |
| | : | |
| OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, | : | |
| Appellee. | : | |
| | : | |

ADMINISTRATIVE APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2020-11-1687

sb2 inc., and Amy C. Baughman, for appellant.

Dave Yost, Ohio Attorney General, and Theresa R. Dirisamer, Assistant Attorney General, for appellee.

**PIPER, P.J.**

{¶1} Appellant, Jerome Merritt, appeals a decision of the Butler County Court of Common Pleas upholding a decision of appellee, the Ohio Department of Job and Family Services ("the Agency").

{¶2} Jerome is an elderly man who suffered a stroke and requires long-term, 24-hour skilled nursing care. Jerome's son, Glenn Merritt, arranged for Jerome's admission to

Heritagespring of West Chester ("Heritagespring") to receive necessary care, and Jerome designated Glenn his healthcare and general power of attorney. As part of the process of obtaining Medicaid benefits, Glenn authorized Heritagespring to act as Jerome's Medicaid Authorized Representative.

{¶3} Heritagespring filed an application for long term Medicaid benefits on Jerome's behalf and requested both ongoing and retroactive coverage. It also advised Glenn to establish a Qualified Income Trust ("QIT") on Jerome's behalf should Jerome's income level be too high to qualify him to receive benefits. Glenn then established the QIT and funded it with a $100.00 deposit, but did not make subsequent deposits until several months later.

{¶4} Jerome receives $1,358 in monthly Social Security benefits, as well as $2,353.48 in monthly retirement benefits. Out of his total monthly benefits, Jerome pays two ex-wives monthly spousal support of $300 and $1,755.99. Even though there were spousal support obligations, Jerome's application for long-term Medicaid was denied for being over the maximum income limit. Once Glenn properly funded the QIT, Jerome's Medicaid eligibility was established as of July 2020. However, he was not credited for the months between his initial denial and his proper funding of the QIT. Glenn appealed the decision on behalf of Jerome and an Agency hearing officer held a hearing on the matter.[1]

{¶5} The Agency hearing officer upheld the initial decision denying Jerome's request for long-term Medicaid. Glenn then appealed that decision on Jerome's behalf to the Butler County Court of Common Pleas, and the Common Pleas Court affirmed the Agency's decision. Glenn now appeals that decision, raising the following assignments of

---

1. At first, the Agency denied the request for a hearing because it determined that the attorney who filed the request did not have proper authorization to request a hearing on Jerome's behalf. However, this court reversed that decision, finding that proper authorization had been given so that a hearing should be held. *Merritt v. Ohio Dept. of Job & Family Servs.*, 12th Dist. Butler No. CA2019-09-160, 2020-Ohio-2674.

error.  For ease of discussion, we will address some assignments of error together when the issues are interrelated.

{¶6}    Assignment of Error No. 1:

{¶7}    JEROME MERRITT'S ACTUAL NEED FOR A QIT IS QUESTIONABLE, HOWEVER, THIS ALLEGED NEED SHOULD NOT PRECLUDE HIM FROM BEING AWARDED BENEFITS FROM THE DATE OF THE APPLICATION BECAUSE HIS INCOME WAS NOT CORRECTLY BASED UPON HIS AVAILABLE INCOME.

{¶8}    Assignment of Error No. 2:

{¶9}    ASSUMING, ARGUENDO, THAT JEROME MERRITT DID REQUIRE A QIT TO QUALIFY, NOTHING IN THE OAC STATES THAT RETROACTIVE COVERAGE IS NOT APPLICABLE ONCE A QIT IS ESTABLISHED.

**Administrative Appeals**

{¶10}  According to R.C. 5101.35(E), "an appellant who disagrees with an administrative appeal decision of the director of job and family services * * * may appeal from the decision to the court of common pleas."

{¶11}  "R.C. Chapter 2506 governs the standards applied to appeals of administrative agency decisions."  *Hindu Soc. of Greater Cincinnati v. Union Twp. Bd. of Zoning Appeals*, 12th Dist. Clermont No. CA2018-11-081, 2019-Ohio-2494, ¶ 17.  "A common pleas court reviewing an administrative appeal pursuant to R.C. 2506.04 weighs the evidence in the whole record and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of the substantial, reliable, and probative evidence."  *Bingham v. City of Wilmington Bd. of Zoning Appeals*, 12th Dist. Clinton No. CA2012-05-012, 2013-Ohio-61, ¶ 6.  An agency's decision is presumed to be valid and the burden is upon the party contesting the determination to prove otherwise.  *Terrace Park v. Anderson Twp. Bd. of Zoning*

*Appeals*, 1st Dist. Hamilton Nos. C-140741 and C-140745, 2015-Ohio-4602, ¶ 13.

{¶12}  An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope.  *Queen v. Union Twp. Bd. of Zoning Appeals*, 12th Dist. Fayette No. CA2015-05-011, 2016-Ohio-161, ¶ 13.  "[T]he standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance."  *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 30.  As such, during our review, this court may not substitute its judgment for that of the common pleas court.  *Smith v. Warren Cty. Rural Zoning Bd. of Zoning Appeals*, 12th Dist. Warren No. CA2018-07-078, 2019-Ohio-1590, ¶ 18.  Rather, "this court must affirm the common pleas court's decision unless it finds, as a matter of law, that the lower court's decision was not supported by a preponderance of reliable, probative, and substantial evidence."  *Taylor v. Wayne Twp. Bd. of Trustees*, 12th Dist. Butler No. CA2008-02-032, 2009-Ohio-193, ¶ 10.

{¶13}  "Within the ambit of questions of law for appellate-court review is whether the common pleas court abused its discretion[.]"  *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 14.  An abuse of discretion is indicated where there is an arbitrary, unreasonable, or unconscionable attitude on the part of the common pleas court.  *Natl. Amusements, Inc. v. Union Twp. Bd. of Zoning Appeals*, 12th Dist. Clermont No. CA2002-12-107, 2003-Ohio-5434, ¶ 7.  An "arbitrary" decision "is one made 'without consideration of or regard for facts [or] circumstances.'"  *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, ¶ 12.  A decision is "unreasonable" where it is not supported by a sound reasoning process.  *Nationwide Agribusiness Ins. Co. v. Heidler*, 12th Dist. Clinton Nos. CA2018-06-003, CA2018-07-004, CA2018-09-012, and CA2018-09-015, 2019-Ohio-4311, ¶ 46.

### Qualified Income Trust - QIT

{¶14}  In his first two assignments of error, Jerome argues that he does not need to

maintain a QIT because his available income is below the maximum income threshold if the amounts of his spousal support obligations are not considered as part of his available income. Additionally, Jerome argues that even if he needed a QIT, once established, retroactive coverage is not prohibited.

{¶15} A QIT is a trust that allows an individual whose income is otherwise over the income level to have income excluded when determining Medicaid eligibility. The QIT receives the excess income into the trust to be used specifically for healthcare purposes. Ohio Adm.Code 5160:1-6-03.2(B)(6). According to Ohio Adm.Code 5160:1-6-03.1(H), the first step in determining one's income for purposes of qualifying for long-term Medicaid coverage is to first "total only the individual's gross income, earned and unearned * * * then exclude the following income types." The code then lists 23 exclusions, none of which are applicable in the case sub judice.

{¶16} According to Ohio Adm.Code 5160:1-3-03.1(B)(1), "eligibility for medical assistance is dependent in part upon the amount of monthly income available to or received by the individual." (B)(1)(a) goes on to provide, "gross income, prior to any deductions or exclusions, that can be reliably anticipated is considered available in calculating countable income for a month. * * * Any portion of the income which is retained by an individual into the next month becomes a resource." Ohio Adm.Code 5160:1-3-03.1(B)(1)(b).

{¶17} Thus, the plain meaning of the code makes clear that "available" income is determined by the person's gross income before any deductions or exclusions are calculated. As such, one's gross income is not reduced by required monthly obligations or payments. While one's "resources" may be impacted by monthly obligations, such do not impact one's gross income unless expressly excluded by the code section mentioned above.

{¶18} The same may be said for the meaning of "income" as stated in Ohio

Adm.Code 5160:1-1-01(B)(32). "Income" means cash, * * * or something of value which is received, *available*, and attributable to an individual." (Emphasis added.) Based on the clear definitions noted above, Jerome was not entitled to have his monthly spousal support payments deducted from his income for purposes of determining whether the QIT was necessary.[2] After reviewing the record, and based on Jerome's undisputed monthly income, the Common Pleas Court did not abuse its discretion in affirming the Agency's determination that Jerome's income exceeded the maximum threshold and that a QIT was required for Medicaid eligibility.

**Application of Federal Law**

{¶19} Jerome suggests that Ohio has not set forth reasonable standards for determining Medicaid eligibility. According to 42 U.S.C. 1396a(a)(17), a state must provide "reasonable standards" for determining eligibility requirements that take into account income and resources "available" to the applicant. However, the federal statute does not define the term "available," and only directs states to adopt reasonable standards that are "consistent with [Medicaid] objectives." *Lankford v. Sherman*, 451 F.3d 496, 509 (8th Cir.2006). The *Lankford* court determined that "the reasonable-standards provision focuses on the aggregate practices of the states in establishing reasonable Medicaid services" based upon financial need. *Id.* However, the court noted that Congress did not provide "meaningful instruction" on the interpretation of how "reasonable standards" apply to medical needs. *Id.* Instead, states are granted "broad discretion" to implement the general

---

2. Ohio Adm.Code 5160:1-3-03.1 was amended in 2020, and now provides in relevant part, "(C) Under certain circumstances, the amount of income determined available to an individual may be greater than the amount of income that the individual actually receives for his or her own use. The following types of income deductions *are not subtracted from* the individual's countable income for purposes of determining eligibility for medical assistance. This list is not all-inclusive. (1) Court-ordered income deductions. (a) *This includes* child and/or *spousal support*, even if such support is paid directly to the former spouse or child's guardian by the employer or benefit payer." (Emphasis added.) This amendment clearly supports our analysis of how the code instructs an agency to determine eligibility.

goals of Medicaid's reasonable-standards provision.

{¶20} Ohio acted within its broad discretion in setting the terms for Medicaid assistance by setting forth the process for determining eligibility based upon the applicant's gross income, before deductions are calculated. Thus, there is no conflict between federal law and Ohio's applicable code.

**Notice**

{¶21} Jerome also asserts that he lost several months of eligibility because the Agency did not provide him notice that a QIT was required and notify him of how much funding the QIT would require. While there is no requirement listed in the code regarding an agency's duty to inform an applicant that a QIT may be required, the record indicates that the Agency did inform Glenn that a QIT may be necessary, that Jerome's application for long-term care was denied because his income exceeded the maximum threshold, and that Jerome may become eligible by depositing excess funds into a QIT. Moreover, the notice of denial included a statement that Jerome's QIT was underfunded. Thus, the record indicates that the Agency performed its duty under the code to determine Jerome's eligibility and state the reasons for denial. The Agency's denial provided relevant notice of the QIT issue and properly informed Jerome that he needed to set up and properly fund the QIT in order to ensure eligibility.

**Retroactivity**

{¶22} The relevant code in place at the time of Jerome's application provided,

> (b) The administrative agency shall approve retroactive eligibility for medical assistance effective no later than the first day of the third month before the month of application if the individual:
>
> (i) Reports he or she received medical services of a type covered by medical assistance within the three months prior to the application month; and

(ii) Requests retroactive eligibility be determined; and

(iii) Would have been eligible for medical assistance at the time the services were provided if an application had been made at that time, regardless of whether the individual was alive when the application actually was made. Actual income received in each retroactive month shall be used to determine eligibility for that month.

Ohio Adm.Code 5160:1-2-01(L)(1)(b).[3]

{¶23} Given our analysis above, Jerome's income made him ineligible for long-term Medicaid and he was required to fund a QIT with his excess income in order to become eligible. Thus, he remained ineligible until his QIT was properly funded, and he was not eligible prior to that date, retroactively or otherwise.

{¶24} While Glenn argues that he would have established the QIT earlier had he known one was needed, the record establishes that Glenn did establish the QIT before he submitted the application for eligibility on Jerome's behalf. He did not, however, fully fund the QIT, nor was it in compliance with the code's clear directive regarding eligibility requirements based on income levels.

{¶25} After reviewing the record, we find that the trial court properly affirmed the Agency's determination that Jerome's income exceeded the threshold maximum and that he was not eligible for long-term Medicaid assistance until his QIT was fully funded. As such, Jerome's first two assignments of error are overruled.

{¶26} Assignment of Error No. 3:

{¶27} THE JULY 19, 2018 DENIAL SHOULD BE OVERTURNED BECAUSE CMS NEVER APPROVED THE OHIO REGULATIONS RELATING TO QITS AS THEY EXIST CURRENTLY, AND BECAUSE THE STATE DID NOT RECEIVE CMS APPROVAL, THE

---

3. Under the most recent version of the regulation, effective December 14, 2020, this language is now located in subsection (M)(1)(b).

REGULATIONS ARE NOT VALID. FURTHER, BECAUSE OHIO HAS NEVER OBTAINED CMS APPROVAL FOR THE ENACTMENT OF THEIR QIT REGULATIONS, FEDERAL LAW PREEMPTS STATE LAW.

{¶28} Jerome argues in his third assignment of error that the common pleas court erred in denying his application for long-term Medicaid assistance because the Agency's rules regarding QITs have not been approved by the Center for Medicare and Medicaid Services ("CMS") and that federal law preempts Ohio's use of QITs.

{¶29} In his brief, Jerome recognizes that Ohio's Administrative Code allows for the use of QITs, but argues that the state never approved the requirement that a QIT be created and funded "prior to submitting a Medicaid application." However, the code does not require the creation and funding of a QIT before a person may apply for coverage, only that the QIT be created and funded before that person can be ruled eligible for Medicaid benefits. Thus, there is no need for the CMS to approve the requirement that a QIT be created and funded prior to submitting a Medicaid application, as suggested by Jerome, as no such requirement exists.

{¶30} Jerome next argues that Ohio's use of QITs without taking into consideration spousal support obligations renders the code in conflict with federal law and that federal law preempts state law. However, and as noted above, Jerome's arguments center upon a misguided use of the term "available." He continues to argue that his "available" income must deduct his spousal support obligations from his monthly benefits.

{¶31} However, like Ohio, federal law does not exclude spousal support obligations from one's available income. *Johnson v. Flanagan*, 179 Ga.App. 708, 710, 347 S.E.2d 643 (1986) (amounts that may be deducted from the individual's gross income "does not include alimony payments"); *see also Clark v. Commr. of Income Maintenance*, 209 Conn. 390, 396, 551 A.2d 729 (1988) (reversing the lower court's decision because it subtracted the

applicant's alimony obligation when determining available income for Medicaid eligibility pursuant to federal law). Instead, the federal regulations list "required" and "optional" deductions, which again, are not applicable to the case sub judice according to 42 C.F.R. 435.725(c) and (d) and which do not include a deduction for spousal support obligations.

After reviewing the record, we find that Jerome's third assignment of error lacks merit, and is thus, overruled.

{¶32} Assignment of Error No. 4:

{¶33} THE LOWER COURT'S APRIL 12, 2021 DECISION UPHOLDING THE ADMINISTRATIVE APPEAL DECISION AFFIRMS THE AGENCY'S VIOLATION OF FEDERAL LAW AND THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT OF 1973, BECAUSE IT PLACES UNDUE BURDEN ON MR. MERRITT, WHO IS DISABLED.

{¶34} Jerome argues in his final assignment of error that the common pleas court's decision violates federal law because it places an undue burden on him.

{¶35} The record reveals that Jerome did not raise this argument before the Agency or the common pleas court. "It is axiomatic that a party cannot raise new issues or legal theories for the first time on appeal and failure to raise an issue before the trial court results in waiver of that issue for appellate purposes." *BAC Home Loans Servicing, LP v. Mullins*, 12th Dist. Preble No. CA2013-12-015, 2014-Ohio-4761, ¶ 22. As such, we will not address Jerome's argument, and his final assignment of error is overruled.

{¶36} Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.